## Fitzgerald *versus* Stewart.

| 53 | 343 |
|----|-----|
| 219 | ₃ 39 |

1. In an action for slander, where the general issue only was pleaded, it was right for the court to refuse to charge, "that if the defendant did no more than repeat a report which originated from the plaintiff's levity and carelessness, the plaintiff could not recover."

2. The rule in Pennsylvania is, that while the general character of the plaintiff in slander may be assailed, particular reports or reports of particular offences may not be given in evidence for any purpose.

3. After the verdict was rendered there was a motion for a new trial, pending which the plaintiff died: the court overruled the motion and entered judgment *nunc pro tunc* on the verdict. *Held,* that this was regular.

4. In order to do justice, the court has power to enter judgment at their discretion, as of a time when it ought to have been entered.

ERROR to the Court of Common Pleas of *Armstrong county.*

This was an action of slander, at the suit of Mary Stewart, by her father and next friend, John Stewart, against Margaret Fitzgerald; the writ was issued June 26th 1863. The words laid imputed fornication. The plea was, not guilty. The speaking of the words having been proved, the defendant urged in mitigation of damages, that before the speaking of the words there were reports in the neighborhood of the same kind, and that they had arisen from what had been said by the plaintiff herself. Some evidence was given on these points.

The defendant in her 2d point asked the court to charge:—

"That if the jury find that the defendant did no more than

[Fitzgerald *v.* Stewart.]

repeat a report, which originated from the plaintiff's levity or carelessness, the plaintiff cannot recover."

The court (Buffington, P. J.) answered:—

"This point is answered in the negative under the pleadings. There is no plea of justification. Its only effect can be to mitigate the offence, and lessen the damages. The evidence was not admitted as justification, and if offered in that point of view would have been overruled. It was only admitted in mitigation."

Her 3d point was:—

"If the jury find that there were general suspicions and reports, that the plaintiff was in the family-way and had given birth to a child, in circulation in the neighborhood before the defendant spoke the words, and the defendant only uttered what was already in general circulation, in that event the jury will consider the fact in mitigation of damages."

The court answered:—

"If the jury believe these suspicions and reports originated with the plaintiff herself, it is material evidence in lessening the amount of damages. But if the evidence, in their opinion, does not prove that the plaintiff gave rise to the reports, then such reports, although they did exist, are not evidence against the plaintiff, and ought to be disregarded and rejected by the jury. The reason of this is, that such rumors and reports may have originated with the defendant herself, and the law forbids the circulation of such rumors unless their truth can be proved."

There was a verdict, June 9th 1865, for the plaintiff for $300. On the 12th of same month, defendant moved for a new trial. On the "24th October 1865, the death of the plaintiff, Mary Stewart, and death of her father and next friend, John Stewart, suggested, and rule granted to show cause why the writ and action should not abate. On 4th December 1865, motion for a new trial overruled, and rule to abate the suit discharged, and judgment on the verdict *nunc pro tunc*, as of the 12th of June 1865."

The errors assigned were, the answers to the points, the refusal "to abate the action, and entering judgment therein *nunc pro tunc*, after the death of the plaintiff and her next friend."

*Golden & Neale* and *Boggs*, for plaintiff in error, cited Tibbs *v.* Brown, 2 Grant 39; 2 Greenl. on Ev., § 424 and note; Leicester *v.* Walter, 2 Camp. 251; ———— *v.* Moore, 1 Man. & Sel. 284; Richards *v.* Richards, 2 M. & Rob. 557; 3 Stephens N. P. 2578; Kennedy *v.* Gregory, 1 Binn. 85; Long *v.* Brougher, 5 Watts 440; Conroe *v.* Conroe, 11 Wright 198; Wood *v.* Prescott, 2 Mass. R. 175; Stone *v.* Varney, 7 Metc. 86; Bridgman *v.* Hopkins, 1 Am. L. Reg. 168 and note; Penrod *v.* Morrison, 2 Penna. R. 130; Sandback *v.* Quigley, 8 Watts 463; Ireland *v.* Champneys, 4 Taunt. 884.

[Fitzgerald v. Stewart.]

*D. Phelps*, for defendant in error, cited Tibbs *v.* Brown, 2 Grant 39; Elliot *v.* Boyles, 7 Casey 65; Smith *v.* Smith, 3 Wright 441; 2 Greenl. on Ev., § 275; Kellogg *v.* Cary, 3 Penna. R. 102; Smith *v.* Buckecker, 4 Rawle 295; Long *v.* Brougher, 5 Watts 439; Minesinger *v.* Kerr, 9 Barr 312; Griffith *v.* Ogle & Kimmell, 1 Binn. 172; Tooker *v.* Beaufort, 1 Burr. 146; Trelawney *v.* Bishop of Winchester, Id. 219; Dartmouth College *v.* Woodward, 4 Wheat. 518.

The opinion of the court was delivered, January 7th 1867, by
STRONG, J.—This was an action on the case for slander, in which the defendant pleaded the general issue alone. At the trial the court was requested to charge the jury, that if the defendant did no more than repeat a report which originated from the plaintiff's levity and carelessness, the plaintiff could not recover. But the court refused to affirm the point and instructed the jury that the fact, if found by them, was material only in mitigation of damages—that it did not bar the action. This was undoubtedly correct, and so obviously in accordance with what the pleadings and the authorities demand that it requires no vindication.

The 2d assignment of error is to the answer given by the court to the defendant's 3d point, which was, " that if the jury found there were general suspicions and reports that the plaintiff was in the family-way, and had given birth to a child, in circulation before the defendant spoke the words, and that the defendant only uttered what was already in general circulation, in that event they should consider the fact in mitigation of damages." To this the court answered, that if these suspicions and reports originated with the plaintiff herself, it was material in lessening the damages; but if the evidence did not prove that the plaintiff gave rise to the reports, the fact that they existed was not evidence against the plaintiff, and ought to be disregarded by the jury. It is to be noticed that the point did not refer to the general character of the plaintiff, but to suspicions of a single guilty act. Nor did the point present a case of suspicions known to the defendant when she uttered the slander. If they were unknown, their existence did not tend to show a less degree of malice in the defendant. And if they were known, it ought to be regarded no apology for her that others were repeating similar slanders. In the present case, the defendant herself may have been the author of the reports, long before she spoke the words complained of in the declaration. Whatever may be the rule elsewhere, it is well settled with us, that while the general character of the plaintiff in an action for slander may be assailed, particular reports, or reports of guiltiness of particular offences, may not be given in evidence for any purpose, not even to mitigate damages. It is

sufficient for this branch of the case to refer to the following decisions, and to the reasons given for them: Kellogg *v.* Casey, 3 Penna. R. 102; Smith *v.* Buckecker and Wife, 4 Rawle 295; Steinman *v.* McWilliams, 6 Barr 170; Smith *v.* Stewart, 5 Barr 372. They justify the answer of the court to which exception has been taken.

The 3d assignment of error is the one which has been most earnestly pressed. It arises out of the following facts. The verdict was rendered on the 9th of June 1865, and on the 12th of the same month the defendant moved for a new trial. While the motion was pending the plaintiff died. On the 4th of December 1865, the court overruled the motion for a new trial, and also a motion to abate the suit, and entered judgment on the verdict, *nunc pro tunc*, as of the date when the motion for a new trial was made. Herein it is said the court erred.

Undoubtedly an action for slander abates on the death of the plaintiff. But when the plaintiff in this case died, she had recovered a verdict, and she was entitled to a judgment. That she had not obtained her judgment was due to the court's having taken time to consider the defendant's motion for a new trial, a motion which subsequently appeared to be without merit. Why, then, could not the court compensate for its own delay, and do justice, by entering a judgment as of the date when the plaintiff was entitled to it? Why should the defendant be permitted to reap a benefit from her own dilatory and groundless motion? The argument is that the suit died with the plaintiff, and that the court had no power to resuscitate it. This, at best, would be but a very refined technicality, and employed to defeat justice. It finds no support, however, even in the strictest technical rules. At common law the death of either a sole plaintiff or defendant, *in any case*, abated the suit; yet if, after verdict, either party died in vacation, judgment could be entered that vacation as of the preceding term, and it would be a good judgment, as of that preceding term. The death of the party did not abate the suit in any such sense as to render the court powerless to enter a judgment to take effect from a day prior to the death. So, if either party died after a special verdict, and pending the time taken for argument or advisement thereon, or on a motion in arrest of judgment, or for a new trial, judgment could be entered at common law after his death as of the term in which the postea was returnable, or judgment would otherwise have been given *nunc pro tunc*, that the delay arising from the act of the court might not turn to the prejudice of the party: Tidd's Practice 846-7. Personal actions now do not die with the person any more completely than all actions did at common law. There is, and there always has been, in the courts, a common-law power to enter judgment *nunc pro tunc*, at their discretion, regulated, it is true, by certain rules.

[Fitzgerald *v.* Stewart.]

To this a statutory power has been added. The statute of 17 Charles 2, c. 8, enacted that where either party, in any action, personal, real or mixed, dies between verdict and judgment, his death shall not be alleged for error, so as the judgment be entered within two terms after the verdict. This statute is reported to be in force in Pennsylvania: Roberts's Digest 369. The language of the act is very general. It applies to all actions, and so it has been construed. It recognises, but does not attempt a substitute for, the common-law power immemorially asserted by courts, to give judgments to take effect from a date prior to their rendition, and to operate as if they had been given at that time. Sometimes the power is exercised under the statute, and sometimes independently of it. In Murray *v.* Cooper, 6 S. & R. 126, a judgment was entered *nunc pro tunc*, as of a date eight years prior to its entry, and Chief Justice Tilghman, after referring to the statute of Charles 2, said: "In such a case the plaintiff is entitled to his judgment by virtue of the statute, without calling upon the court to exercise any extraordinary power. But independently of the statute, the court has power, in order to do justice, to enter judgment at their discretion, as of a time when it ought to have been entered."

Nor is this power of the court limited at all, by the nature of the action pending. There is one case which seems to rule otherwise. It is Ireland *v.* Champneys, 4 Taunt. 884. It was an action on the case for libel, in which the defendant suffered judgment by default, and a writ of inquiry was executed at the spring assizes, the jury assessing the damages at £1500. After the assessment, and before the next day in banc, the plaintiff died, and his executors entered final judgment. The court set aside the judgment, being of opinion, so far as may be gathered from the report, that the suit had abated by the death of the plaintiff, and that the case was not within the statute of Charles 2. Why it was not within the statute does not appear; and why, if it was not, it was beyond the reach of the common-law power of the court, is still more incomprehensible—unless it be that the delay in entering the judgment arose from the act of the plaintiff and not from that of the court. But whatever may have been the ground of the decision in that case, it is certain that a case in most respects similar was subsequently held to be embraced within the provisions of the statute. In Palmer *v.* Cohen, 2 B. & Ad. 966, which was also an action for a libel, the plaintiff obtained a verdict at the summer assizes, and died before the Michaelmas Term next following. After his death, his executor entered up judgment. A rule was then taken to set aside, on the ground that the right of action did not survive to the executor. The court, however, sustained the judgment, and ruled that the act of Charles 2 did apply to such a case; holding, in effect, that it

[Fitzgerald *v.* Stewart.]

made no distinction between actions that survive and those that do not. See also Evans *v.* Rees, 12 A. & E. 167.

So in the courts in this country it has repeatedly been held that such a judgment is entirely regular. In Morris *v.* Corson, 7 Cowan 281, we find an action for a malicious prosecution, in which it appears that the plaintiff died the day before the trial, but after the first day of the term. The court, notwithstanding, proceeded to trial at that term, and a verdict was found for the plaintiff, on which judgment was entered, which related to the first day of the term. This was held regular under the New York revised statute, a substantial re-enactment of the act of Charles 2, and the court said: "The remedy is not confined to cases where the cause of action survives, but is general."

In Brown *v.* Wheeler, 18 Conn. 198, an action of trespass for an assault and battery, where it appeared that the plaintiff had died after a verdict in his favor and before judgment, it was decided that judgment might be entered as of the date of the verdict; the court declaring that it made no difference whether the cause of action would survive or not. To the same effect is Dial *v.* Hollen, 6 Ohio N. S. 228—an action for slander. In harmony with all these decisions is the case of Griffith *v.* Ogle & Kimmell, 1 Binn. 172. It was an action on the case in the nature of a writ of conspiracy, the counts charging an unlawful combination to slander the plaintiff. He recovered a verdict in October 1802. The defendants moved for a new trial, and in arrest of judgment, and the motions were overruled in October 1804. But as the plaintiff had died in March 1803, the court ordered judgment to be entered as of a term when he was living, and this court decided that the judgment was perfectly regular.

The record now before us is then without error.

Judgment affirmed.