## Smith *versus* Tome.

1. The identical matter of an exception should be in the assignment of error; it is not enough that it appear in the bill of exceptions.

2. Judgments were recovered against J. which were assigned to A., and under them J.'s land was sold to A.; J. retained possession and made improvements.   Judgments were recovered against A. and the land was sold to T.   In ejectment by T. against J. it might be proved in defence, that the judgments against him had been purchased by A. with J.'s money to protect J.'s land for him, that A. so admitted after the sheriff's sale; and that he had conveyed to J., by deed not recorded, with other facts tending to show J.'s ownership of the land and T.'s knowledge before his judgment against A.

3. These facts did not constitute a parol sale of the land by A. to J. but a trust by parol, the title in the trustee and the cestui que trust in possession.

4. T. having been informed of this took no better title by the sheriff's sale under his judgments against A. than A. had.

5. The limitation under which a parol trust can be enforced, does not apply when the cestui que trust is in possession.

March 13th and 14th 1871.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bradford county* : No. 195, to January Term 1871.

On the 23d of March 1869, Jacob Tome brought an ejectment against Israel Smith, for three tracts or parcels of land; the first containing one acre, the second containing about 133 acres, part of a tract known as the Sarah Morrison tract, the third a cluster of islands in the Susquehanna river containing about 16 acres. There was an award for the plaintiff from which Israel Smith appealed.

On the trial, November 8th 1870, before Streeter, P. J., the plaintiff gave evidence by W. F. Cole that the defendant had been

[Smith v. Tome.]

in possession of the land for thirty years; he was out of possession for eight years, and then went into possession again.

The defendant, on cross-examination (by his offer No. 1), proposed to ask the witness, "If after Israel Smith went back into possession since 1855, he has been in possession ever since." This was objected to by the plaintiff as not being cross-examination, and also as irrelevant. The offer was overruled and a bill of exceptions sealed.

The plaintiff then gave in evidence a number of judgments against the defendant, some of which had been assigned to Alanson B. Smith, defendant's brother, executions issued on all, the land sold under them, and sheriff's deed for the land made to A. B. Smith in 1856.

Also judgments in 1860 against A. B. Smith, all assigned to plaintiff (Tome). Also a suit in which Bell & Hollenback were interested, and questions relating to the land were involved, and an agreement in that suit between Bell & Hollenback and the defendant and A. B. Smith to refer the controversy to William Elwell and others; they to award the land to A. B. Smith, and assess the damages between Bell & Hollenback and Israel Smith. On the 6th of October 1862 the referees awarded the land to A. B. Smith, and assessed $2631.17 damages to Israel Smith, to be paid by Bell & Hollenback. Also quit-claim deed, February 10th 1863, from Bell & Hollenback to A. B. Smith for the land, and receipt of defendant, April 15th 1863, for $2631.17 for the money awarded. Also amicable revival of judgments between plaintiff and A. B. Smith, December 3d 1864; fi. fa., March 21st 1868; inquisition and exemption waived, December 30th 1868; vend. exp. issued, to which was attached a notice from defendant forbidding the sheriff to sell, January 28th 1869; land sold to plaintiff and deed acknowledged February 4th 1869.

The plaintiff then rested, and the defendant offered to prove:—

2. That when the property in suit was sold by the sheriff of Bradford county as the property of Israel Smith, the defendant, and purchased by A. B. Smith, that the said A. B. Smith was only the trustee of defendant, and had no actual interest in the land; and that at and immediately after the award made by Elwell, Maynard and Baird, the same relationship continued between the defendant and A. B. Smith, except that the defendant was indebted to A. B. Smith for some advances he had made, and that by agreement between them the defendant was to have the land, took possession of the same, and has continued in possession ever since, claiming the land as his own, exercising acts of ownership over the same, and paying all taxes assessed upon it, and that in the spring following of 1863 the defendant paid to A. B. Smith all that was due him on account of his advancements. This was before any lien of plaintiff against A. B. Smith.

[Smith *v.* Tome.]

3. That the judgments against him, given in evidence by the plaintiff, were purchased by A. B. Smith from the said plaintiff in said judgments under an agreement with said judgment-creditors made with Israel Smith, the defendant, and that the said Israel Smith's money or property paid for said judgments so assigned to the said A. B. Smith, and that said A. B. Smith used said judgments for the purpose of protecting and perfecting the defendant's interest in the lands in question ; and that said A. B. Smith, when he purchased at sheriff's sale the land in suit, under and by virtue of said judgments, and after he had acquired the sheriff's title as aforesaid, admitted that he took and held the title for Israel Smith, and that he was doing so to enable his brother Israel to hold the land.

To be followed by evidence that after the sheriff's sale Israel Smith continued in possession of the land, making valuable improvements, claiming the land as his own, and so admitted by said A. B. Smith, and that Israel Smith has so continued up to the present time.     That at the time of the submission of disputes to referees, Elwell, Baird and Maynard, in which it was stipulated between the parties that the land should be awarded to A. B. Smith ; that it was then agreed and understood by and between A. B. Smith and Israel Smith, that upon awarding the land to A. B. Smith, he, the said A. B. Smith, was to hold the same as before the submission for the use and benefit of the said Israel Smith, and in pursuance of such agreement when the land was so awarded, said A. B. Smith told Israel, "Now go down there and go to work and make you a home—the land now belongs to you —and I will make you a deed for it when you pay me for my costs and expenses."     To be followed by evidence that on the 8th of May 1865, by writing, he did so convey the land to the said Israel Smith, and that the money and expenses laid out and expended by A. B. Smith for Israel, in pursuance of their agreement, has been fully paid to the said A. B. Smith ; and that in the spring of 1863, the spring after the award of referees, the defendant informed the plaintiff of his owning the land and the agreement he had made with A. B. Smith, and that the defendant was going to repair the mills, and to expend a large amount of money upon said property, and for that purpose said Tome lent to the defendant $100, which was expended in furnishing materials for repairing said mill, and in pursuance of such talk with said Tome, and with the full knowledge and consent of said Tome, the said defendant did expend a large amount of money in making such improvements.

The court (Streeter, P. J.) rejected these offers and sealed bills of exception.

The verdict was for the plaintiff.

[Smith v. Tome.]

The case is so fully presented in the opinion of THOMPSON, C. J., as to require no further statement.

The defendant took a writ of error, and assigned errors as follows:—

1. The court erred in rejecting the evidence contained in the defendant's written offer No. 1.

2. The court erred in rejecting the evidence contained in defendant's written offer No. 2.

3. The court erred in rejecting the evidence contained in defendant's written offer No. 3.

*E. Smith* and *H. W. Patrick*, for plaintiff in error.—When the purchase-money is furnished by one, and the title taken by another, there is a resulting trust in favor of the one advancing the money: Edwards *v.* Edwards, 3 Wright 377. The evidence offered was part of the *res gesta*: Kelpin *v.* Kelpin, 1 Myln. & K. 537; Tritt *v.* Crotzer, 1 Harris 457; Hill on Trustees 97. The declarations of A. B. Smith after the transaction were evidence in confirmation of the arrangement between the parties: Strimpfler *v.* Roberts, 6 Harris 283; McBarron *v.* Glass, 6 Casey 135; Clark *v.* Trindle, 2 P. F. Smith 492. It was an act of bad faith in A. B. Smith to receive the purchase-money from Israel under an arrangement to purchase the property for him, and then repudiate the arrangement: Barnet *v.* Dougherty, 8 Casey 371; Lynch *v.* Cox, 11 Harris 265; Harrold *v.* Lane, 3 P. F. Smith 268. Tome stands on no higher ground than A. B. Smith: Shryock *v.* Waggoner, 4 Casey 430; Garrard *v.* Pittsburg and Connellsville Railroad Co., 5 Id. 158; Lloyd *v.* Lynch, 4 Id. 419; Leach *v.* Ansbacher, 5 P. F. Smith 85.

*U. Mercur*, for defendant in error.—The payment of the purchase-money by the cestui que trust subsequent to the acquisition of the title by the trustee is insufficient to create a resulting trust: Barnet *v.* Dougherty, 8 Casey 371. An admission is insufficient to divest a previously acquired estate: Edwards *v.* Edwards, 3 Wright 369; Sample *v.* Coulson, 9 W. & S. 62; Fillman *v.* Divers, 7 Casey 429; Boynton *v.* Winslow, 1 Wright 315.

The opinion of the court was delivered, May 8th 1871, by

THOMPSON, C. J.—It seems to us that nothing can be clearer, as it appears from the history of this case, than that there was error on part of the court below in the rejection of the defendant's third offer of testimony. This offer virtually includes the second, which was also rejected, and needs not be discussed separately.

It is quite true, as stated in the argument of the defendant in error, that the assignments of error in this case are not according

18 P. F. SMITH—11

[Smith *v.* Tome.]

to the rule of court, as construed in Burkholder *v.* Stahl, 8 P. F. Smith 371, and might be disregarded by this court. We have concluded, however, to grant the counsel of the plaintiff in error a dispensation in this particular case, upon the excuse made, and their promise to do better in future. But this liberality must not be relied upon to cover cases in which the excuse is less cogent than it was here. The error of these assignments is in omitting the identical matter of the exception from the assignment itself. It is not sufficient that it appears in the bill of exceptions. There it is historical—in the assignment of error it is a material part of the pleadings in this court, and cannot be legally omitted : Burkholder *v.* Stahl, *supra.*

Now, as to the 3d assignment of error : Israel Smith, the defendant below, offered to prove that the land in controversy was his own by purchase, and possession for some thirty or forty years. That in 1855 he became embarrassed, and his brother, A. B. Smith, under whom Tome, the plaintiff, claims, purchased up the claims of certain creditors, with Israel Smith's money, and obtained judgments thereon against him, and sold the property and bought it in on these judgments, agreeing to hold title for his use ; he, Israel, remaining in possession, making improvements as the owner thereof all the while, and afterwards. In 1855, after the judgments obtained by A. B. Smith, if we mistake not, Israel Smith pledged the land by deed as security to Bell, Hollenback & Co. for money loaned to improve the property. In 1862 there was a final settlement by arbitrament between Bell, Hollenback & Co., and A. B. and Israel Smith, and of certain suits between the former and Israel Smith. In this submission to arbitration, it was agreed that in the event that Bell, Hollenback & Co.'s claim was satisfied there should be a reconveyance of the land by them to A. B. Smith, who at the time held the sheriff's deed of the property in trust for Israel Smith ; and he agreed to hold the title on the same trust as he was holding the sheriff's deed. The arbitrament resulted in finding a balance due from Bell, Hollenback & Co. to Israel Smith, of $2605.58, and an award of the reconveyance of the land, according to the terms of the submission, to be made by Bell, Hollenback & Co. to A. B. Smith, and this was accordingly done about the date of the award. In 1868 the plaintiff below, it is alleged, in collusion with A. B. Smith, procured an assignment of some judgments against him, revived them by consent, issued executions on them against the defendant, A. B. Smith, who waived inquisition, and agreed to a condemnation of the lands in question, in possession of Israel Smith, and proceeded to a sale of them on a venditioni, and bought them in and procured a sheriff's deed therefor on the 4th of April 1869. At the sale, the defendant Israel Smith gave notice of his claim to the lands, and forbid the sale. All this is

[Smith *v.* Tome.]

contained in the defendant's third offer, and more, to wit: that A. B. Smith agreed to reconvey the title he held in trust, by virtue of the deed from Bell, Hollenback & Co. to Israel Smith, when he should pay him some costs and expenses incident to the trust; that he did pay the same, and in 1865 A. B. Smith did reconvey the land, and that the plaintiff, long before his judgment against A. B. Smith, was informed by Israel Smith how the land was held by him, and that A. B. Smith had no interest in it.

If these facts were substantially established, it cannot be doubted that they would constitute a good defence against the title of the plaintiff below. It was not the case of a parol sale of lands by A. B. Smith to Israel Smith, and within the Statute of Frauds and Perjuries. It was a trust by parol; the title in the trustee, and the possession in the cestui que trust. If the plaintiff below was informed of this before he proceeded, he would take no better title than that of his judgment-debtor. This is too familiar to require a reference to authorities to prove. As he derived title through him, he could attain no other or greater than such as he had. If he had notice of the reconveyance by A. B. Smith to Israel, as was offered to be proved, although not on record, the defendant being in possession, manifestly he would acquire no title under A. B. Smith. If he could, any man's property might be sold for any other man's debt. If he had not notice of this, but had of the trust in A. B. Smith, then he would only be invested with the title of the latter. This being so, he could not recover possession any more than could A. B. Smith, and he certainly could not. We held in Clark *v.* Trindle, 2 P. F. Smith 492, and since, that the limitation within which a parol trust can be enforced, did not apply to a case where the cestui que trust was in possession in execution of the trust. That was Israel Smith's position, not only when the trust originated, and for years after, but by the declarations of A. B. Smith offered to be proved after he acquired a title from Bell, Hollenback & Co. The third error is therefore clearly sustained, and as it embraces the second, we need not further notice this error.

I think the rule which constitutes cross-examination, and which is discretionary to some extent with the court, was very rigidly administered in rejecting what constitutes the first assignment of error. We would not reverse for this alone, for the defendant might have called and asked the witness as his own, the rejected question, and there could hardly be an objection to that. But for the reasons given, this case must go to a retrial; both law and justice seem to demand it. We see nothing further which needs discussion in this case.

Judgment reversed, and *venire de novo* awarded.