## Foley et al. v. Smay et ux.

430

*Carrol Carruthers*, for plaintiffs.
*Marker & Rial*, for defendants.

GORDON, JR., P. J., first judicial district, specially presiding, April 2, 1942.—This action in ejectment is brought by two of the four heirs at law and next of kin of Mary Jane Palmer, deceased, to recover their respective undivided quarter interests in a lot of ground in Derry Township, Westmoreland County, Pa., formerly owned by decedent, and which had been purchased by defendants during her lifetime from the Barclay-Westmoreland Trust Company, the guardian of her estate appointed by a decree of the court of common pleas, sitting in equity, declaring her incompetent to manage her affairs. The suit is based upon the contention that the sale was unlawful and void because of various defects in the proceedings in which the guardian was appointed and the property sold to defendants, the principal defect being the failure of the guardian to notify plaintiffs, as next of kin of the incompetent, of the presentation of the petition for the sale, thus invalidating it as to their interests in the property. By agreement of the parties, the suit is before us for trial without a jury, and from the pleadings and undisputed record in the case we find the controlling facts to be as follows:

On October 19, 1929, Mary Jane Palmer, an elderly woman of enfeebled intellect, brought a bill in equity in this court as of no. 142, against her daughter, Olive Foley, one of the plaintiffs here, and the latter's husband, James Foley, to recover certain property, including the real estate in question, which it was alleged

Mrs. Palmer's daughter had acquired from her by undue influence and fraud. The case duly proceeded to a final adjudication in which the court held that the property involved, consisting of the real estate and approximately $1,000 in cash, and comprising the entire estate of Mrs. Palmer, had been secured from her by her daughter without consideration and by fraud and overreaching. On this finding the court entered a decree nisi directing the return of the real estate and personalty to plaintiff, declaring her mentally incompetent to manage her affairs and likely to become the prey of designing persons, and appointing the aforesaid trust company guardian to receive and administer her estate.

When the decree was entered, a regular proceeding for the appointment of a guardian for Mrs. Palmer had already been instituted on the law side of the court as of November term, 1929, no. 553, and in dismissing exceptions to the adjudication and entering the final decree in the case the court in banc held, with respect to that part of the decree which declared the incompetency of plaintiff:

"At the time the trial judge found this fact he was not aware that such a proceeding was pending in this court before another judge but his main object in finding this fact and appointing a guardian was to prevent her from frittering away her property again and getting into an entanglement such as she is in with these defendants. This matter, however, is disposed of by the judge before whom the proceeding was pending to determine her capacity to take care of her estate by joining with the trial judge and the court in banc in affirming this finding of fact."

The case was then appealed to the Supreme Court, which affirmed the action of the court below on November 23, 1931: Palmer v. Foley et ux., 305 Pa. 169. In the opinion written by Mr. Justice Walling the court said, with respect to the asserted irregularity

in the appointment of a guardian in that proceeding (at p. 176) :

"When this bill was filed, a proceeding was instituted on the law side of the court to have a guardian appointed for Mrs. Palmer, because of her incapacity. This was never formally concluded, but the lower court, in disposing of the case at bar, decreed that defendants transfer the property in question to a designated trustee for plaintiff's use, and further decreed that she was so weak mentally as to be liable to become the victim of designing persons and fritter away her estate and therefore appointed the said trustee as her guardian. It is immaterial to the defendants whether the property be returned to Mrs. Palmer or to a trustee for her use. Hence, they have no standing to raise that question. A decree, although irregular, will not be reversed except at the instance of a party injured thereby. Treating the appointment of guardian as made in the pending proceeding on the law side of the court, the appeal therefrom should be to the Superior Court."

This affirmance by the Supreme Court of the lower court's action in appointing a guardian in the very case in which plaintiff Foley was a defendant, coupled with her subsequent failure to challenge the appointment in the manner indicated by the Supreme Court, completely eliminates, as far as she is concerned, the asserted irregularity in failing to give her notice of the application for the appointment of a guardian as a basis for maintaining her present action in ejectment.

On June 15, 1933, the guardian presented a petition for a private sale of the real estate to defendants in this case for $800, and it is alleged defects in the presentation of this petition, and the proceedings under it, which are made the basis of the ejectment action before us. These defects fall into two classes—those that affect the jurisdiction of the court to act upon it, and those that are merely procedural irregularities.

Considering, first, the procedural irregularities relied upon by plaintiffs, the petition sets forth, inter

alia, that the court had theretofore made an order for the support of the ward, that her property had been entirely exhausted by her maintenance, and that nothing was left in the estate except the real estate in Derry Township; that it was in bad repair; that it was appraised at $580, with a judgment lien of $100 against it; and that, subject to the approval of the court, petitioner had entered into an agreement to sell the property to H. S. Smay and Lena, his wife, the present defendants, for $800. On June 26, 1933, the court made the following order on the petition:

"And now, June 26, 1933, the within petition having been duly presented to court on June 15, 1933, pursuant to notice as set forth in said petition, and after due consideration thereof, the court being in doubt as to the adequacy of the price offered for said property, the portion of the prayer requesting a private sale thereof is denied, and it is ordered and directed that the property therein described be offered and exposed to public sale by the Barclay-Westmoreland Trust Company, guardian therein named, and the said sale be held on the premises therein described on Thursday, July 20, 1933, at 10 o'clock A. M., Eastern Standard Time, and that the guardian give notice of said sale by advertising once a week for three successive weeks in newspapers of general circulation in Latrobe, Westmoreland County, Pennsylvania, and in Blairsville, Indiana County, Pennsylvania, and by not less than ten handbills duly posted on the premises and in the most public places in the vicinity of the property, and that return of said sale be made to the court for confirmation."

This decree is irregular in a number of particulars. Under section 6 of the Act of May 28, 1907, P. L. 292, guardians of weak-minded persons "have precisely the same powers" and are "subject to the same duties as a committee on lunacy", whose powers and duties are defined and regulated by the Act of June 13, 1836, P. L. 589. Section 24 of that act provides that "No order for the sale or mortgage of real estate, as afore-

said, shall be granted, unless it appear that due notice of the intended application was given to the wife, if any, and the next of kin of the lunatic or habitual drunkard, capable of inheriting the estate"; and section 22 provides that "If the personal estate . . . shall not be sufficient . . . it shall be lawful for the court of common pleas, having jurisdiction of the accounts of the committee . . . to make an order, authorizing such committee to sell at public sale, or mortgage, such parts of the same as the said court shall deem expedient." Section 6 of the Act of 1907, supra, further provides that "all absolute sales in fee simple, except as hereinafter provided, shall be by public sale or vendue, . . . and after full advertisement for at least twenty days by handbills, posted in at least twenty of the most public places in the city or county where the said premises shall be situated, and in at least two newspapers not less than three times in each."

While the court's decree required notice of the sale to be given three times in two newspapers, one of the publications was directed in an adjoining county. It also departed from the requirements of the act by providing for the posting of "not less than ten handbills on the premises and in the most public places in the vicinity of the property", rather than "in at least twenty of the most public places in the city or county where the said premises shall be situated". The return of the sale and the petition for its confirmation show that the advertisement was made as ordered by the court, but do not indicate the number of handbills posted, and hence there is nothing in the record before us to justify a conclusion that the number of bills required by the act were actually posted. The decree also failed to comply in form with the requirement of section 26 of the Act of 1836 that every order for the sale of real estate shall specify "the terms of the sale, the amount of security to be given by the committee, and the day on which the order of sale is to be returnable".

All of the foregoing defects are mere procedural irregularities, which would have justified the court's refusal to confirm the sale or its subsequent vacation, but do not go to the jurisdiction of the court to make the order, and should have been raised in the proceeding in which the order was made. They cannot, therefore, be attacked collaterally in the present case by those who were before the court by sufficient service of the petition.

"The principle that the integrity of a judgment of a court having jurisdiction, except for fraud, cannot be questioned collaterally is so indurated in our judicial policy that citation of authority to support it would seem vain and useless iteration . . .": Kennedy v. Baker et al., 159 Pa. 146, 149. In Shearer et ux. v. Peffer, 155 Pa. 501, in which an attempt was made in an action in ejectment to set aside a sheriff's sale for want of an adequate description of the improvements in the sheriff's advertisement, the court said (p. 502):

"The defendants hold the sheriff's deed so made and acknowledged, and the learned judge who tried this case rightly ruled that he could not in this action review the conduct of the sheriff in making advertisement of the property, or the ruling of the court in declining to stay proceedings on this writ." See also Allison v. Rankin, 7 S. & R. 270.

For these reasons we are of opinion that the numerous procedural defects in the sale advanced by plaintiffs are not available to them as grounds for recovery of the property in ejectment. Defendants bought it on the faith of a decree of a court which had control of the management of the estate, and which, under the decision of the Supreme Court, had properly appointed the guardian, and within the scope of its powers the regularity of their exercise cannot be collaterally attacked.

The procedural defects in the sale being eliminated as grounds of recovery in ejectment, we come to a consideration of the more serious jurisdictional question

raised by the alleged absence or insufficiency of proper service on the plaintiffs of the notice of presentation of the petition for leave to sell the property. Upon this question the case for each of the plaintiffs is different, and they will, therefore, be considered separately.

Mrs. Palmer died on September 20, 1935, leaving as heirs and next of kin the plaintiff Olive Foley and Laura Bell Dumont, daughters, William Palmer, a son, and the other plaintiff, Raymond Oliver, a grandson by a deceased daughter. The present proceedings were begun on May 17, 1937. Laura Dumont and William Palmer, the two heirs who are not parties to this action, accepted service of the petition for the sale in writing and joined in its prayer. On June 14, 1933, plaintiff Foley was notified that the petition would be presented to the court on the following day, June 15th, but the petition itself is marked as filed on June 27, 1933. From this it is argued that the notice was ineffective as to Mrs. Foley because the petition was not presented on the day named in the notice. While it was so marked, the decree entered under it on June 26th recites that the petition had actually been presented on June 15th, the date fixed in the notice. There is no merit, therefore, in the contention that, although served before the 15th, it was not presented until the later date.

While it is true that the service on June 14th did not comply with the rule of court which requires 10 days' notice of the presentation of a petition, the court had the power to waive its own rule, and, unless it appears that the person so served was substantially prejudiced by the failure to give a longer notice, it will be taken to have waived the rule by virtue of its having acted upon the petition in the circumstances. The actual service of the notice in advance of the presentation of the petition removes this objection from the class of jurisdictional defects and renders the service a mere procedural irregularity which, as we

have already indicated, cannot be attacked collaterally. There is nothing in the pleadings or evidence before us to even suggest that Mrs. Foley did not actually receive the notice, which was served upon her husband, who was also a party to the bill in equity, or was not present when it was presented to the court. At any time after its service, and even after the confirmation of the sale, she could have appeared and objected to the sale on this ground. In view of her recent experience in the equity case, in which this very property was recovered from her by her mother, it is highly unlikely that she was in ignorance of the sale at the time it was made. Yet she voluntarily chose to do nothing, and remained silent from 1933 until this proceeding was begun in 1937, long after her mother had died and the estate had been settled, before taking any steps to set aside the sale. Balked in one effort to cheat her mother of the property, she is in no equitable position to upset a judicial sale to a bona fide purchaser for value upon such a ground. Her silence when she could, and should in all fairness, have spoken promptly, is equivalent to her waiver of the irregularity of the service and consent to the sale. We are of opinion, therefore, that the sale was valid as to plaintiff Foley, and that defendants are entitled to judgment in their favor as to her interest.

The case for the other plaintiff, Raymond Oliver, stands on an entirely different footing. For some undisclosed reason, he was neither named in the petition as one of the next of kin nor served with notice of its presentation. This rendered the proceeding coram non judice, and invalidated the sale as to him and his interest in the property. In Bennett et al. v. Hayden et al., 145 Pa. 586, it was held that failure of the committee of a lunatic to serve such a petition upon the next of kin deprives the court of jurisdiction to decree the sale, and that this may be set up in an action in ejectment by the widow and heirs of the lunatic against

the purchaser at such a sale, or his grantee. As was said by Mr. Justice Paxson in that case (p. 596) :

"This notice was not given. Notice was given to the widow alone. These were both serious blunders. Are they more than blunders, or mere irregularities, which are cured by the decree of the court, so far as to protect said decree from attack collaterally? In other words, do they go to the jurisdiction of the court? We are of opinion that they are more than mere irregularities. Under the act of assembly cited, the court had no power to decree a private sale of this real estate, and no jurisdiction to entertain or consider a petition praying for a private sale. Moreover, the court had no jurisdiction to make an order even for a public sale, unless it appeared upon the face of the petition that the notice to the next of kin required by the twenty-fourth section had been given. The entire proceeding was coram non judice." See also Patchin v. Seward Coal Co., 226 Pa. 159, and Mitchell v. Spaulding, 20 Pa. Superior Ct. 296 (affirmed by the Supreme Court in Mitchell v. Spaulding, 206 Pa. 220).

In the latter case, after holding that service upon the father of a minor next of kin was insufficient, the Superior Court said (p. 301) :

"The provisions of the statute are not satisfied by notice to some of the next of kin, all must be notified. The jurisdiction of the court is to be determined from the facts set forth in the petition, and this petition disclosed a fact which deprived the court of jurisdiction to make an order of sale . . ."

We, therefore, conclude that the sale was invalid and void as to plaintiff Raymond Oliver and that defendants have no legal defense to his action.

Equitable defenses, however, may be set up in ejectment: Greenlee v. Greenlee, 22 Pa. 225; Smith v. Tome, 68 Pa. 158; Fricke v. Safe Deposit & Trust Co., 183 Pa. 271; and this brings us to a consideration of the two remaining questions in the case: First, whether

plaintiff can recover whatever interest he has in the land without returning, or tendering, the $200 which represents his proportionate share of the purchase price of the property paid by the defendants at the sale; and, second, whether, in the very unusual circumstances of this case, plaintiff inherited any interest in the land from his grandmother for which he can maintain this action in ejectment? We shall consider these questions separately, but as they are largely interdependent with regard to the factual matters that control them and the reasoning involved we do not consider it necessary to repeat facts and arguments common to both questions.

The property was the sole remaining asset of Mrs. Palmer's estate, and the $800 it brought was entirely consumed in her maintenance, leaving nothing for her heirs at her death. There is no suggestion that the price was inadequate, and had the sale been strictly according to the requirements of the act plaintiff would have inherited nothing from his grandmother. Why, then, should he, an heir, be permitted, without returning the purchase money, to recover what he would never have inherited? Let us suppose that, instead of selling the property, the guardian had retained it and borrowed the money necessary to maintain its ward. On her death, the property would have been subject to the lien of the debt so contracted, and plaintiff would still have inherited nothing. He inherited only whatever rights his ancestor had in the property at her death and, had she recovered her reason and elected to repudiate the sale by bringing ejectment in her own behalf, could she have maintained the action without repaying, or tendering, the purchase price to the defendants? This question was raised in the Supreme Court in Bennett v. Hayden, supra, which refused to pass upon it (p. 598) because it had not been raised or considered in the court below. In Jackson v. McGinness, 14 Pa. 331, the court said (p. 335) :

"It is, however, proper to say, that it is incumbent on the plaintiff to give some evidence of the sum John agreed to pay; for if Jackson presented John with the land without price, or if the former purchased for the latter, he cannot recover without at least refunding the purchase money paid by McGinness and Antram."

The cases are numerous in which plaintiffs in ejectment have been required, as a prerequisite to recovering the land, to return money expended in good faith on improvements: Phillips et al. v. Coast et al., 130 Pa. 572. And the same rule applies to purchase money, provided it was paid without fraud and in ignorance of the invalidity of the title being acquired. Thus in Beeson v. Beeson, 9 Pa. 279, which was an ejectment to recover land purchased by a trustee at his own sale through a secret agent, the Supreme Court affirmed an instruction to the jury to the effect (p. 281) :

"That the sale to defendant, one of the executors, was voidable at the election of the plaintiff, although he was not active in the proceeding under which it took place; and that plaintiff might avoid it on that ground, paying the price which defendant had paid for it, and the cost of the improvements he had put on it."

So also in Beck v. Uhrich, 16 Pa. 499, the court held that the purchaser of land from an administrator, who had purchased it with funds belonging partly to the trust and partly to himself, was entitled to be reimbursed the one half of the purchase money paid by him before notice of the trust, unless he had been fully compensated to the extent of one half of the purchase money out of the rents and profits; but that it was not necessary that the amount be tendered before suit. See also Donovan v. Driscoll, 93 Pa. 509.

Defendants bought the land in good faith and on the strength of a court decree which they had no reason to believe was improvidently issued. Indeed, as far as the record disclosed, it was entirely regular in the re-

spect under consideration. Raymond Oliver's name did not appear anywhere in the record of the case as a next of kin of Mrs. Palmer, and service was made upon all those named in the petition as being entitled to be served. It would be going far to hold that the bidders at a judicial sale are required, in these circumstances, to go beyond the record and to make their own independent search for the ward's relations under penalty of thereafter losing both the property and the money paid for it to some unnamed, or even unknown, next of kin. Such a rule would tend to damage the estate by driving bidders away from the sale, and cannot be justified on equitable principles or from consideration of practical expediency. We are of opinion, therefore, that plaintiff Raymond Oliver would not be entitled to recover his interest without repaying to defendants his proportionate share of the purchase money and, no recoupment having been made or tendered, he is not entitled to recover his interest in the land.

The second and remaining question, namely, whether, in the unusual circumstances of the case, plaintiff inherited from his grandmother any interest in the land for which he can maintain ejectment, must also be answered in the negative. Of course, the validity of the sale can be challenged only by those whose title is superior to that of the purchaser—that is to say, by those who would be entitled to the land had the alleged void sale not been made. Neither of the plaintiffs would have had any standing to maintain the action had Mrs. Palmer left the property by will to another. So here, we think they inherited nothing, because the first right to challenge the sale remained in her estate after her death until her debts were paid. At least equitably, therefore, only that passed to them which remained after payment of her debts. Had the property remained in her estate, it would have been sold after her death, and the entire proceeds applied to the settlement of the guardian's accounts. It has neither been shown nor contended that the price realized was not the full and

fair value of the property; and even if it were not we could not try that question here. Mere inadequacy of price and the validity and propriety of credits claimed by the guardian at the audit of its accounts are questions which can be raised only in the guardianship proceedings. However we look at the substance of the situation, we find that the property was consumed in its entirety before Mrs. Palmer's death, and nothing, therefore, passed by descent to plaintiff. This, we think, is the manifest equity of the case, and completely defeats the right of both plaintiffs to recover in the present action. We, therefore, enter the following finding and verdict in the case:

*Finding and verdict*

And now, to wit, April 2, 1942, upon consideration of the pleadings and proofs presented, the court finds that plaintiffs are not entitled to recover their alleged respective quarter interests in the property here in suit, and that defendants are entitled to a verdict in their favor.