# Halderman's Appeal.

104   251<br>107   325

1. The Act of April 20th 1869 (P. L. 78), entitled, " An Act to provide for the admission of certain classes of the insane into hospitals for the insane in this Commonwealth and their discharge therefrom " relates solely to the subject expressed in its title, and does not supply, modify or repeal any of the provisions of the Act of June 13th 1836 (P. L. 589), with respect to the issuing of a commission de lunatico inquirendo, and providing for the disposition and control of the estates of lunatics.

2. A summary inquiry under the provisions of the Act of 1869, does not prevent a subsequent inquisition under the Act of 1836.

3. Where a committee of the estate of a lunatic was erroneously appointed by the court, in proceedings under the Act of 1879, and, in pursuance of an order of sale, sold real estate belonging to the lunatic. which sale was confirmed by the court, and the court subsequently discharged a rule to show cause why the appointment of the committee and all acts performed by him should not be set aside; the supreme court upon appeal reversed so much of the decree as refused to set aside the appointment of the committee, and remitted the cause to the court below for further proceedings. Whether the sale of the real estate by the committee under the order of the court was validated by the Act of April 28th 1876 (P. L. 50), not decided, all parties in interest not being before the court in this appeal.

October 11th 1883. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

[Halderman's Appeal.]

APPEAL from the Court of Common Pleas of *Armstrong county:* Of October and November Term 1883, No. 123.

This was an appeal by Joseph W. Halderman, from a decree discharging a rule, granted upon his petition, to show cause why the appointment of C. Snyder as committee in lunacy of the estate of the petitioner, and all acts performed by him as such committee, should not be set aside.

The facts of the case are fully set forth in the following opinion by the court below (NEALE, P. J.), discharging said rule:

These proceedings are before the court for consideration upon a petition of Joseph W. Halderman, filed the 23d November 1881, setting forth:

1st. That on the 2d day of October 1880, the petitioner was found to be insane by the report of three examiners (commission) appointed by the court, consisting of S. S. N. Calhoun, Ross Reynolds, Jr., and Absalom Russell, M. D., and upon confirmation of report he was directed to be confined in the West Penna. Hospital. The said examiners were appointed upon petition and single affidavit of Jeremiah Halderman, and without notice to petitioner.

2d. That upon these proceedings Conrad Snyder was appointed the committee of said petitioner, and took charge of his estate, personal and real, the latter consisting of 162 acres of land in Wayne township, Armstrong county, which said real estate said committee sold against protest, &c., at much below its real value, &c., see petition.

3rd. That said proceedings at No. 89, December Term 1880, were wholly irregular and void, and praying the same to be set aside, &c.

4th. Setting forth that petitioner has been restored to a sound state of mind. Praying the court to receive proof of this fact, and further praying the court to direct the committee to pay over to petitioner the money received from the estate of petitioner other than the proceeds of the real estate.

Pursuant to this petition the court appointed Austin Clark, Esq., a member of the bar, a commissioner, to take testimony and report facts as to the present sanity of said Joseph W. Halderman. Which report, finding the facts to be as alleged, was returned to the court and filed on the 15th December 1881, and thereupon the court, on said 15th December 1881, approved of the finding, ordered that the commission issued in this case and the appointment of committee and all proceedings relating thereto be altogether *suspended and determined.*

On the 22d December 1881, M. F. Leason, Esq., attorney for Joseph W. Halderman, moved the court for a rule to show

[Halderman's Appeal.]

cause why *the appointment of the committee and all acts performed by him while acting as such committee should not be set aside*, founded upon the petition filed 23d November 1881, supra, which rule was granted, and subsequently argued upon the testimony and law, and which questions are now for the determination of the court.

It is unfortunate that both the original petition and the reports of the commissioners have been mislaid or lost, and were not produced upon the argument of the rule. An extract from the record and proceedings has been submitted, showing the following facts:

28th September 1880, petition of Jeremiah Halderman filed, and S. S. N. Calhoun, Ross Reynolds, Jr., and Absalom Russell, M. D., appointed Examiners.

And now, 2d October 1880, report of commissioners filed. Same day the matter came on to be heard upon report of the examiners, and upon due examination and consideration the report approved, and Joseph W. Halderman, the person named in the said proceedings, adjudged to be insane and directed to be committed to the Western Pennsylvania Hospital, at the expense of the county of Armstrong primarily, and it appearing to the court that the said insane person is possessed of an estate adequate to his maintenance, a rule is granted upon the committee hereafter and the children and relations of said Joseph W. Halderman to show cause why said county should not be reimbursed from his said estate for his maintenance and costs. And it is further ordered that Conrad Snyder be and is hereby appointed committee of the said Joseph W. Halderman, to give bond in the sum of five thousand dollars, with John Steele and Samuel Mateer sureties, who are hereby approved. James B. Neale, P. J. Same day bond filed.

29th October 1880, appraisement list filed. Same day list of sale filed. (The appraisement of personal property amounts to $546.82. The amount of sale was $741.35.)

On the 7th January 1881, the petition of Conrad Snyder was filed setting forth:

1st. Lunacy of J. W. Halderman and his appointment as committee, giving a bond and its approval, and that the personal estate amounts to about $700.

2d. That the real estate consists of about 160 acres of land in Wayne township, Armstrong county, of the value of about $3,000, with description of same.

3rd. That the debts of said Joseph W. Halderman, including his keeping at the insane asylum to this date (4th January 1881), amounts to over $1,200.

4th. That it will be necessary for the purpose of paying

[Halderman's Appeal.]

said debts and expenses, and maintaining said Joseph J. Halderman to sell the said real estate.

Whereupon, on the 7th January 1881, the court awarded an order of sale. To which on the 3rd March 1881, return of order was made, executed as follows :

"I did on the 25th day of February, 1881, on the premises, expose the same to sale, after due public notice according to law and the rule of court, and did sell the same on the premises to James S. Young for the sum of $2,910, he being, the highest and best bidder and that being the highest and best price bidden for the same.

Sworn and subscribed }          CONRAD SNYDER,
to 3rd March 1881.      }                    Committee."

7th March 1881, presented and confirmed nisi. 29th March 1881, no exceptions being filed, confirmed absolutely.

            : A. H. STITT, Pro.

30th April 1881, partial account filed and notice to be given of the filing of same and that it will be confirmed on 1st Monday in June 1881, unless exceptions be filed in the meantime, according to section 1, rule number 2, page 10 rule book. Publication to be made in Democratic Sentinel and Armstrong Republican.

6th June 1881, presented and confirmed nisi, to be absolute if exceptions be not filed in four days.

13th June 1881, confirmed absolutely and W. D. Patton appointed an Auditor to distribute the funds.

30th August 1881, report of Auditor filed showing balance for distribution as per account.          $1,285.39

|  |  |  |
|---|---|---|
| Costs of audit. | $29.75 | |
| Lien debts. | 894.89 | |
| Other debts. | 515.36 | $1,440.00 |

Same day report confirmed nisi, to which no exceptions appear to have been filed. 21st September 1881, W. D. Patton appointed Commissioner to find the Auditor's Report.

The foregoing statement exhibits the main facts in this proceeding.

Neither the papers at hand nor the records show what facts were suggested in the petition upon which the commission in lunacy issued ; the number of affidavits attached to it nor the evidence upon which the finding of the inquisition was based.

That Joseph W. Halderman was, at the time of the finding of the inquisition, a lunatic, does not appear anywhere to be disputed, and his petition to be declared restored to a sound state of mind would seem to admit his previous insanity.

The exceptions presented seem to be framed with reference

[Halderman's Appeal.]

to the validity and regularity of the proceedings under the Act of 13th June 1836.

Examined and considered under the general features of that Act many of the exceptions would certainly apply.

1. The first exception, " That the record does not show that the petition was supported by affidavits," cannot be determined for the reason that the petition is not before us. Under the 6th section of the Act of 20th April 1869, Purdon 970, it is not so provided, and does not fall within the ruling of BREWSTER, J., In re Lincolin, 1 Brewster, 395.

2. The second exception, " that no jury was empancled and no commissioners appointed," applies to the mode of proceeding under the Act of 1836. The record shows an appointment of three persons, namely, a physician, a lawyer and another. The presumption is in favor of the regularity of their proceedings afterwards confirmed by the court.

3 & 4. The third and fourth exceptions, that no notice was given to lunatic nor to any of his kin except those concerned in the proceeding, and that the court directed no notice to be given. That the return of the pretended inquisition was in four days after their appointment, and was acted on without giving time for exceptions or objections. That said report should not have been confirmed till four days after the first day of the court following said appointment.

These exceptions, like the preceding, go to proceedings under the Act of 1836, and do not apply to the provision of the Act of 1869.

How far they could even be sustained under the former Act we cannot determine in the absence of the full record. But as a proceeding under the Act of 1869,—which this evidently was,—the record itself shows sufficient regularity. What averments of the condition of lunatic, the urgency of action, and condition of his estate the original petition contained, we have no means of ascertaining, and must presume that it bore nothing on its face suggestive of any other mode of proceeding than the one acted upon or applied for.

The Act of 1869 appears to be an original Act, founded upon a different state of facts than those that existed at the time of the passage of the Act of 1836, which contemplated the actual custody and care of the objects of its provisions by the committee where public hospitals and asylums had not been provided, as they have been subsequently. The care of the lunatic was in the discretion of the committee, and often greatly neglected. Under the late law the court directs where he shall be kept and treated, and in the confidence of an honest and faithful attention to his physical and mental condition

may have less hesitation in promptly committing him to such an institution provided by the state.

The extent of the proceedings under the Act of 1869, is explained in the case taken from this county and reported in 30 P. F. Smith. See opinion in Brickway's case, 30 P. F. Smith, page 69.

It appearing then, under the Act of 1869, that the proceedings have been regular as to the adjudication of lunacy, it remains to be considered further, whether the exceptions should be sustained applying to the subsequent proceedings.

5. The fifth exception, that no notice of application to sell real estate was given to next of kin or those likely to inherit the same.

6. No bond was given by committee, before the court directed the sale of the real estate.

7. The court never confirmed the sale.

The evidence of the record and of witnesses called, show that the petition was presented in due form and an order issued thereon. The affidavit made on the return of the order is full as to notice and regular, sufficient for the court to have acted upon in confirming the sale. The bond originally given was doubtless deemed adequate, and hence another or additional security was not required, as it far exceeded the supposed and real value of the personal estate. The testimony on the part of the petitioner possibly shows that the sale was made at a price below what might have been obtained for it or its real value. This, however, is not ordinarily regarded as a sufficient ground for setting aside a sale.

But on the part of the committee, Conrad Snyder, there is testimony that the land sold for its then full value. However, for the matter contained in these exceptions, the parties then taking part in arresting the sale could have had their day in court, and could have filed their exceptions, which might have been effectual in moving the court to set it aside. But it will be observed that the return of sale was presented on the 7th March 1881, and confirmed nisi, and not confirmed absolutely till the 29th March 1881. The rights of the purchaser, an innocent party, then accrued and must be respected.

The evidence also shows that at the time of the examination of the said J. W. Halderman, his mother and brother were present, had full notice of those proceedings and at their instance Conrad Snyder was appointed the committee, or at least with their concurrence. And such appointment of committee having been made, his subsequent acts under the direction of the court must appear valid, so far as the sale of the property is concerned. And in this respect even for irregularities it would seem that the provisions of the Act approved 28th

April, A. D. 1876, to validate sales, &c. (P. L. page 50), is suffi-
ciently broad to cover all grounds of exception in that respect.

Therefore, under all the facts that are before us, we feel
constrained to deny the petition of the said Joseph W. Halder-
man. If he has any remedy it must be in another form.

And now, 3d April 1883, rule discharged at the costs of the
petitioner.

Joseph W. Halderman thereupon took this appeal, assign-
ing for error the appointment of the committee of his estate,
in proceedings had under the Act of 1869 ; the granting an
order for sale of real estate by the committee, and confirming
his return thereto ; and the decree refusing to set aside the ap-
pointment of the committee, and all acts by him as such.

*George A. Jenks* (*M. F. Leason* with him), for the appel-
lant.—Of the several Acts relating to lunatics that of 1836 is
the only one giving jurisdiction to any court to appoint a com-
mittee of the estate, and control the disposition of the lunatic's
property. The proceedings in this case under the Act of 1869
(except perhaps so far as they provided for confining Mr. Hal-
derman in the hospital) were without jurisdiction, and absolutely
void. It is urged that the sale of the realty, confirmed by the
court, and the whole proceedings, fortified by so many different
decrees, cannot be treated as a nullity. But no court can arro-
gate to itself the power of disposing of a man's property unless
it has jurisdiction under the law, which must appear affirma-
tively : Shriver's Lessee *v.* Lynn, 2 Howard 59 ; Roberts *v.*
Orr, 6 P. F. S. 181.

*E. S. Golden*, for the appellee, submitted a printed brief,
relying on the opinion of the court below.

Mr. Justice TRUNKEY delivered the opinion of the court,
November 12th 1883.

Most of our statutory regulations for proceedings in cases
of lunacy, are taken from the statutes of England. When
lunatics came within the jurisdiction of the crown, the king's
title was found by his sheriff or escheator, assisted by a jury of
the county, whose verdict was called an inquisition or inquest
of office. The ancient mode of proceeding, when it was sug-
gested to the king that a person who had lands was a lunatic,
in order to ascertain the existence of the fact of lunacy, was on
petition to the chancellor to issue a writ to the sheriff or
escheator of the county, where the alleged lunatic resided, to
try by jury and personal examination whether the suggestion
was true or not. This was superseded by a commission ap-
pointed by the chancellor, and the commissioners issued their

precept to the sheriff requiring him to cause a jury of the county to come before them, to inquire of the matters and things given them in charge by virtue of the commission. At an early day, by statute, the right to traverse the inquisition and to a trial by jury in a court at law, was secured to the alleged lunatic. After the inquisition, and finding that the person was a lunatic, a committee of his estate was appointed, who was considered the mere bailiff of the crown. He could make no contract binding upon the person and estate intrusted to his care, unless warranted by an Act of Parliament, and the previous direction of the chancellor was generally required. The rules for ascertaining the fact of lunacy were conservative of the rights of personal liberty, and of the property of the subject, and though instances are not wanting where the chancellor called before him the alleged lunatic, in person, and decided the question of fact, such instances were exceptional, for what was deemed sufficient cause; but were they more frequent the fact would not be authority in this state for proceeding in any other mode than is directed by our statutes.

The court of Common Pleas has the power of a court of Chancery as to the care of the persons and estates of persons non compos mentis. By the Act of 1836 the jurisdiction shall be exercised, upon proper application, alleging that a person is a lunatic, by the issuing of a commission in the nature of a writ de lunatico inquirendo, to inquire into the lunacy of said person, which writ shall be made according to a prescribed form, specifying therein the subjects of inquiry, namely, whether the said person is a lunatic or not, and if he be a lunatic, then how long he hath been so, and if he enjoys lucid intervals; what lands and tenements, goods and chattels he was seised or possessed of, or entitled to, at the time of his becoming a lunatic, and the value thereof; and whether he hath since disposed of part thereof, and to whom; and how old he is, and who are his heirs or next of kin, and the ages of said heirs or next of kin, respectively. For certain causes named in the Act, the court may direct an inquest to be impaneled from the jurors attending the court, to be held by one of the judges thereof, and the inquisition so made shall have like effect as if held by a commission. After the inquisition finding the person therein named is a lunatic, it shall be lawful for the court to commit the custody and care of the person or estate, or of both, of such lunatic, to a suitable person or persons according to the rules heretofore practiced and allowed. The duties of the committee are plainly defined. No order of sale of real estate shall be made, unless upon application and statements as directed in the Act. These provisions are imperative; they give the mode in which the juris-

diction shall be exercised by the court of Common Pleas.  A door is not left open for the court, in the exercise of its chancery powers, to call in a person and summarily determine that he is insane, and thereupon appoint a committee of his person and estate.

Acts of Assembly have been enacted clothing the criminal courts with power to inquire into the fact of insanity of any person alleged to be insane, and upon finding that he is insane, to commit him to a hospital or other place of confinement. Provision is made in the Act of 1860, relating to criminal procedure, whereby a person who is indicted, or charged with crime, may be found insane in the court of Quarter Sessions, or the court of Oyer and Terminer, and the court before whom the trial was had may order the insane person to be kept in strict custody so long as he shall continue of unsound mind. It is obvious that none of these Acts vesting power in the criminal courts to ascertain the fact of insanity of any person, and to commit such person to a place of confinement, repeals, supplies, or modifies any of the provisions of the Act of 1836.

The proceedings in this case to ascertain the fact of lunacy, were under the Act of April 20, 1869, P. L. 78, entitled "An Act to provide for the admission of certain classes of the insane into hospitals for the insane in this Commonwealth and their discharge therefrom." The subject of the Act is expressed in the title; this is essential; the title is a part of the Act and aids, if need be, in its construction; and if there were any provision foreign to the subject named it would be void. In the section directing the procedure to ascertain the fact of insanity of any person, jurisdiction is given to any court or law judge and "on statement in writing that a certain person is insane and that the welfare of himself or of others requires his restraint," the judge shall immediately appoint a commission composed of three persons to inquire into and report upon the facts of the case. In their inquisition they shall hear such evidence as may be offered touching the merits of the case, and if in their opinion it is a suitable case for confinement, the judge shall issue his warrant for such disposition of the insane person as will secure the object of the measure. Only one fact is made essential—that it is a suitable case for confinement. All the provisions of the Act relate to committal of the insane into hospitals, and their discharge therefrom. In terms it is not supplementary to the Act of 1836, is not so in fact, and its title forbids latitude of construction that a criminal court or judge thereof may exercise the powers of a chancellor. True, the person who makes the statement may do so before the court of Common Pleas or a judge thereof; but the purpose of the proceeding and the extent of power are

the same in the criminal court as in the civil. Whether the proceeding, by accident or design, is before any law judge, or in either a civil or criminal court, there is precisely the same measure of jurisdiction and it is manifest that the Act of 1869 neither supplies nor repeals any part of the Act of 1836. The object of the one widely differs from the object of the other, and so also the mode of procedure.

The Act of 1869 authorizes and requires any judge or any court upon complaint respecting an insane person, or upon statement respecting an alleged insane person, setting forth certain facts, to take speedy action for a hearing and ascertaining of the facts, and thereupon to make the proper order as the case may demand, either for the committal or discharge of such person. It was passed for the purposes therein expressed; not to simplify the cumbrous and dilatory proceedings under the Act of 1836, nor to confer jurisdiction over the estate of the lunatic. It provides nothing respecting the care of the lunatic's estate; nor for notices, nor for inquisition of material facts respecting the lunatic, his estate, his heirs or next of kin, for information of the court and of the committee to be appointed. "The charge of the property is in the court though administered by a committee. After the return of an inquisition finding lunacy, the jurisdiction over the property of the lunatic is complete, either for custody, for management or for sale:" Yaple et al. *v.* Titus et al., 41 Pa. St. 195. But the inquisition must be made under the statute regulating the proceedings of the court of Common Pleas in the exercise of its chancery powers for the care of lunatics and their estates.

Although a summary inquiry had resulted in the lawful confinement of Halderman in a hospital, that did not stand in the way of an inquisition under the Act of 1836. Such inquisition is not superseded by any statute when the purpose is to provide for the care of the estate of an insane person. If the welfare of the lunatic or of others requires that he be immediately committed to a hospital, his estate is in no worse condition during the confinement than if he were at large. In either case he is incapable of its management; when confined he is not so likely to waste or destroy it. The first step in the exercise of jurisdiction by the court of Common Pleas is the issuing of a commission in the nature of a writ de lunatico inquirendo. The appointment of Conrad Synder as committee of the estate was error.

Whether, under the Act of April 28th 1876, P. L. 50, the sale of the real estate is valid is a question that can not be determined till all interested parties have opportunity to be heard. At present a decree will not be made that all acts of the committee be set aside. The rulings of the court below

[Matter of Ottercreek Township.]

were on the basis that the committee was appointed as provided by law, and doubtless that court will hereafter make the proper orders respecting the Auditor's report and the money in hands of the committee. The requisite facts for such orders are not set out in the paper-books.

> The decree that Conrad Snyder be appointed committee of the estate of Joseph W. Halderman is reversed at the costs of the appellee, and record remitted for further proceeding.