R. J. BENNETT ET AL. v. J. R. HAYDEN ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY.

Argued October 5, 1891—Decided January 4, 1892.

[To be reported.]

1. Under §§ 22-24, act of June 13, 1836, P. L. 597, empowering the Court of Common Pleas to authorize the committee of a lunatic to " sell at public sale, or mortgage " his real estate, for the payment of his debts, the maintenance of his family, and the education of his minor children, the court has no power to decree a private sale, and no jurisdiction to entertain a petition therefor.

2. Nor has that court jurisdiction to decree even a public sale for the purposes aforesaid, if it do not appear upon the face of the petition that the notice to the wife, if any, and the next of kin of the lunatic, required by § 24 of the act, had been given. It is settled law that the facts set out in the petition determine the jurisdiction of the court.

3. Such want of jurisdiction may be set up in ejectment by the widow and heirs of the lunatic against the purchaser at such invalid sale, or his grantee. And it is not error to refuse an amendment of the record of such sale so as to show such notice, when in fact the notice required was not given. A record can be amended only when there is something to amend by.

4. A sale for the payment of debts, the maintenance of the lunatic's family, and the education of his minor children, can derive no support from the act of April 18, 1853, P. L. 503. That act was not intended to apply to cases where the court already had full power to order a sale, nor to interfere with the mode of proceeding under prior acts.

5. Heirs of a deceased lunatic recovered an absolute judgment in ejectment for land sold by his committee under a void decree. The question whether the verdict should have been conditional, providing for re-payment of the purchase money, and money paid by the vendee in discharge of a paramount encumbrance, could not be raised for the first time in the Supreme Court.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 207, October Term 1890, Sup. Ct.; court below, No. 465 August Term 1888, C. P.

On July 27, 1888, Rebecca J. Bennett, Annie R. Bennett, and others, brought ejectment against John R. Hayden and

the Southwest Pennsylvania Railroad Company, for a tract of one hundred and thirty-five acres in Hempfield township. The defendants pleaded not guilty.

At the trial, on February 20, 1890, having shown that Israel Painter and George Bennett became the owners of the land in dispute on September 4, 1875; that George Bennett died on April 20, 1877, intestate, leaving a widow, Rebecca J. Bennett, and eight children, one of whom subsequently died intestate, unmarried and without issue, leaving her mother, said Rebecca J. Bennett, as her heir at law, said Rebecca J. Bennett and the seven surviving children of George Bennett being the plaintiffs in this action; and having shown possession by the defendants of the land in dispute, the plaintiffs rested.

The defendants then put in evidence the record of a proceeding at No. 316 November Term 1876, of the court below, in the matter of the lunacy of George Bennett. From this record the following facts appeared:

On October 28, 1876, after due proceedings had, George Bennett was adjudged to be a lunatic, and John George was appointed the committee of his person and estate. At that time, his children were all minors, the eldest being aged about seventeen or eighteen, and the youngest about six months. On November 25, 1876, John George, as committee of George Bennett, presented a petition setting forth that the lunatic was possessed, inter alia, of the undivided one half of the land in controversy in the present case; that his personal estate was insufficient for the payment of his debts, as appeared from certain schedules annexed to the petition; that there was no money in the hands of the committee applicable to the support of the lunatic's family and the education of his minor children; and that due notice of the intended presentation of the petition was given to Rebecca Bennett, wife of the lunatic, more than five days prior thereto; praying for an order to sell the interest of the lunatic in the tract of land above mentioned, for the purposes aforesaid, at private sale, the petitioner averring his belief that it would be to the interest of the estate of the lunatic to sell the same at private sale, and that thereby more money could be realized for the same. Attached to the petition was a notice of the application addressed to Mrs. Rebecca Bennett, with an affidavit of its service upon her on November 18, 1876.

Upon the presentation of this petition, the court made an order directing the committee to sell the said real estate at private sale. On the same day, the committee made return that he had sold the interest of the lunatic in said land, at private sale to Israel Painter, for two thousand seven hundred and ten dollars; whereupon the court made a decree confirming the sale, and directing the committee to make a deed to the purchaser, on compliance with the terms of sale. Subsequently the committee filed an account in which he charged himself with the receipt of the purchase money.

The record exhibited also a petition of John R. Hayden, presented December 12, 1887, averring that he had become the owner of the land in question, by purchase from a successor in the title of Israel Painter; that he had contracted to sell to the Southwest Pennsylvania Railroad Co. the right of way for a branch of its railroad, but said railroad company refused to accept a deed therefor from him, " because of the defect in his title, caused by the failure of the said committee of said lunatic to serve the next of kin with notice of the application to sell the real estate of said lunatic; " that the petitioner had attempted to procure an acceptance of notice of the sale of said land, which said heirs and next of kin refused to give; praying the court for a rule to show cause why the record should not be amended, nunc pro tunc, so as to show notice to the next of kin of the lunatic, of the application to sell, etc. A rule having been granted, the respondents answered averring, inter alia, that the petitioner had shown no reason entitling him to have the record amended as prayed for, and that in fact no notice was given to the respondents of the application for sale. Thereupon the rule was " discharged, without prejudice."

The defendants put in evidence, under objections and exceptions, a deed from John George, committee of George Bennett, to Israel Painter, dated November 25, 1876, in pursuance of the sale above mentioned; record of proceedings in the Orphans' Court of Westmoreland county, to No. 23 November Term 1880, for sale of the real estate of Israel Painter, deceased; deed from Israel Painter's administrators to James A. Dick, and deed from James A. Dick and wife to J. R. Hayden. They then made the following offer:

Defendants' counsel offer in evidence mortgage of Israel

Painter and George Bennett to Lewis Collner, dated 4th September, 1875 ; mortgage-book 8, page 566 ; debt $14,387.20 : this offer for the purpose of showing a subsisting lien upon this property at the time of the sale by the committee.

Upon the record of the mortgage so offered appeared a satisfaction thereof executed by the mortgagee on September 26, 1879.

The offer was objected to as irrelevant.

By the court : Objection sustained ; offer refused ; exception.[1]

At the close of the testimony, the court, DOTY, P. J., directed the jury to find a verdict for the plaintiffs for the undivided half of the land described in the writ, with six cents damages and six cents costs, subject to the opinion of the court upon questions of law reserved as follows :

1. The court reserves the point whether or not the record and proceedings at No. 316 November Term 1876, in the Common Pleas of Westmoreland county, Pa., given in evidence by the defendants on the trial of this cause, In re Commonwealth v. George Bennett, were or were not sufficient to divest the title of said George Bennett to the premises in dispute, to wit, the undivided one half of the land described in the writ.

2. And whether the deed given in evidence by defendants, made and delivered by John George, the alleged committee, to Col. Israel Painter, dated November 25, 1876, for the premises, made in pursuance of said proceeding at No. 316 November Term 1876, was or was not sufficient to divest the title of George Bennett to the undivided one half of the premises described in the writ.

The same day, the defendants filed the following motion :

And now, February 20, 1890, counsel for defendants move the court, after testimony closed, to revoke the order of the court at No. 316 November Term 1876, made July 5, 1888, discharging, without prejudice, the rule to show cause, etc., granted February 12, 1887, upon petition of John R. Hayden to amend the record ; the said petition to amend to be considered in connection with the reserved point in the above-stated case.[2]

—The jury returned a verdict for the plaintiffs, subject to the questions of law reserved. The defendants then filed a motion for a new trial, the reasons assigned in support thereof

being, in substance, that the court erred in permitting one of the plaintiffs to testify; " in not admitting in evidence the liens that were subsisting against the real estate at the time of its sale, and to which was applied the money therefrom ; " in not allowing the record of the lunacy proceeding to be amended; in directing a verdict for the plaintiffs, and in not directing a verdict for the defendants.

After argument, the court, DOTY, P. J., on April 5, 1890, filed an opinion citing Spencer v. Jennings, 123 Pa. 193; Wright's App., 8 Pa. 62; Warden v. Eichbaum, 14 Pa. 121; Halderman's App., 104 Pa. 258; and, ruling that the deed of the committee passed no title, entered judgment on the verdict for the plaintiffs.    Thereupon, the defendants took this appeal, assigning inter alia for error:

1. The refusal of defendants' offer.[1]

2. The refusal of defendants' motion.[2]

4. The entry of judgment for plaintiffs on the reserved points.

9. The order of the court "in directing an unconditional verdict in favor of the plaintiffs for the premises described in the writ, without providing for the re-payment by the plaintiffs to the defendants, within a specified time, of the purchase money of the alleged invalid sale by the committee to the defendants' predecessor in title, to wit: the sum of $2,710 ; and further, the one half of the Collner mortgage, which was a subsisting lien at the time of the alleged invalid sale, and undischarged by said sale, and subsequently paid by the defendants' predecessor in title, in addition to the amount of his bid at said sale, which sum in the aggregate amounts to $9,803.10."

*Mr. Paul Gaither* (with him *J. A. Marchand*, *Mr. E. E. Robbins*, *Mr John E. Kunkle*, *Mr. D. S. Atkinson* and *Mr. J. M. Peoples*), for the appellants.

1. The sale by the committee was under the act of April 18, 1853, P. L. 503.    While it is true, the petition sets forth the grounds specified in § 23, act of June 13, 1836, P. L. 597, it is none the less true that better reasons could not have been given to obtain authority to sell under the act of 1853.    The petition gives two good reasons why it would be " to the interest and advantage of those interested therein" that the land be sold. It is a significant fact that the court granted an order for a

private sale, a thing which the act of 1836 does not authorize, but which the act of 1853 permits. Moreover, the act of 1836 grants no power to the committee of a lunatic to sell real estate. While § 22 contains provisions respecting sales and mortgages, it makes no mention of real estate, and its language can be applicable only to the personal estate.

2. Under the circumstances of this case, "the proper parties" were before the court, as required by the act of 1853. The lunatic was represented by his committee; and his wife, who was the mother of his minor children, was notified. The sale having been confirmed, purchase money paid, and more than twelve years having elapsed since the confirmation, such confirmation cannot now be set aside to the prejudice of a purchaser who paid full value, when there is no allegation of fraud. At all events the sale cannot be attacked collaterally in an action of ejectment: Snyder v. Snyder, 6 Binn. 483; McPherson v. Cunliff, 11 S. & R. 422; Spragg v. Shriver, 25 Pa. 285; Adlum v. Yard, 1 R. 163; Wilson v. Bigger, 7 W. & S. 125; Maple v. Kussart, 53 Pa. 352; Merklein v. Trapnell, 34 Pa. 47; Jackson v. McGinness, 14 Pa. 331.

3. The defendant is at least entitled to a conditional verdict, so that, before the plaintiffs can recover possession of the land, they shall be required to pay him what his predecessor gave for the interest of George Bennett therein. They are not innocent holders for value; they walk in the shoes of George Bennett. Is it possible a court of equity would permit him to turn Israel Painter out, without returning the money that was paid to the committee for his use, and also the money that was expended by Painter in discharging encumbrances on the land? Our offer of the mortgage to Collner ought to have been received, and if plaintiffs were entitled to recover, the court should have directed a conditional verdict: Reinhard v. Keenbartz, 6 W. 93; Beeson v. Beeson, 9 Pa. 279; Wilson v. Bigger, 7 W. & S. 127; Jackson v. McGinness, 14 Pa. 331; Beck v. Uhrich, 16 Pa. 499; Mayer v. Senyard, 7 W. N. 224; Donovan v. Driscoll, 93 Pa. 509; Phillips v. Coast, 130 Pa. 572.

*Mr. H. P. Laird* (with him *Mr. J. B. Keenan*), for the appellees:

The defendants were chargeable with notice, when they pur-

chased, that the sale by the committee was void, because a private sale is not authorized by the act of June 13, 1836, P. L. 592, and because the notice prescribed by that act was not given: Gibson v. Winslow, 46 Pa. 380; Weaver v. Wible, 25 Pa. 270; Caldwell v. Walters, 18 Pa. 86. The act of April 18, 1853, P. L. 503, cannot be invoked to sustain the sale. The design of that act was to limit its operation to cases not already provided for by law. Moreover, the proceeding in this instance, beginning with the petition and inquisition in lunacy, was a continuous one, commenced and carried on under the act of 1836. Halderman's App., 104 Pa. 251, was an instance of an unsuccessful attempt to invoke another statute to support a sale by a committee. See also Halderman v. Young, 107 Pa. 324. Moreover, even if the sale was under the act of 1853, the petition was defective in ,not setting out an explanation of the title: Johnson's App., 114 Pa. 142; Heffner's App., 119 Pa. 466; Kemp v. Kennedy, 1 Pet. C. C. R. 36; Gordon's App., 93 Pa. 361; McKee v. McKee, 14 Pa. 231; Grenawalt's App., 37 Pa. 95; Lambrecht's Est., 22 W. N. 24; Miller v. Spear, 21 W. N. 554.

OPINION, Mr. CHIEF JUSTICE PAXSON:

We are unable to see the relevancy of the offer of the mortgage referred to in the first specification of error. It did not in any way affect the question of the validity of the sale of the lunatic's real estate, which was the issue before the court below.

The second specification alleges that the court erred in refusing to allow an amendment of the record at No. 316 November Term 1876. A record can only be amended where there is something to amend by. This motion was to so amend the record as to show that notice of the sale of the real estate by the committee had been given to the next of kin of the lunatic. The proceedings show notice to the widow, but not to the next of kin, as required by the twenty-fourth section of the act of June 13, 1836, P. L. 597. There is no averment in the petition to amend, that in point of fact notice had been given to the next of kin, and omitted from the record by accident or mistake. We are therefore justified in concluding that the notice had not been given, and that the motion was merely an

attempt to falsify, not to amend the record.   The court below
was right in rejecting the application.

The important question is raised by the fourth specification,
which alleges that the court below erred in entering judgment
for the plaintiff upon the questions reserved.   They are as
follows :

" 1.  The court reserves the point whether or not the record
and proceedings at No. 316 November Term 1876, in the Com-
mon Pleas of Westmoreland county, Pa., given in evidence by
the defendants on the trial of this cause, In re Commonwealth
v. George Bennett, were or were not sufficient to divest the
title of the said George Bennett to the premises in dispute, to
wit, the undivided half of the land described in the writ.

" 2.  And whether the deed given in evidence by defendants,
made and delivered by John George, the alleged committee, to
Col. Israel Painter, dated November 25, 1876, for the premises,
made in pursuance of said proceeding at No. 316 November
Term 1876, was or was not sufficient to divest the title of
George Bennett to the undivided one half of the premises
described in the writ."

The material facts disclosed by the record in question may
be briefly stated as follows :

Israel Painter and George Bennett, the lunatic, were the
owners in fee of the premises in dispute, being a farm contain-
ing one hundred and thirty-five acres, situated near Greensburg,
Westmoreland county.   Each of the said parties was the owner
of the undivided one half of said farm.   While the title was
thus held, proceedings in lunacy were commenced in the Com-
mon Pleas of Westmoreland county, at No. 316 November
Term 1876, and were so proceeded in that the said Bennett
was found to be a lunatic, and John George, now deceased,
was appointed his committee, who filed his bond, which was
duly approved.   No fault was found with the regularity of
these proceedings.   On November 25, 1876, the committee
presented a petition to the Court of Common Pleas of said
county for leave to sell the real estate of said George Bennett
at private sale, and tendered a bond for five thousand two
hundred dollars, which was approved, and an order of sale
issued.   On the same day, the committee sold the undivided
half of the farm in question to Israel Painter, for the sum of

two thousand seven hundred and ten dollars. On the same
day, the committee made return of the said sale to the court,
which was duly confirmed, and the deed executed and deliv
ered.

· George Bennett died on the twentieth of April, 1877, at
Kirkbride's Insane Asylum, Philadelphia. Israel Painter died
July 4, 1880. His title had become vested in John R. Hayden,
the defendant below, against whom this action of ejectment
was brought by the widow and children of George Bennett,
deceased. Their contention is that the sale by the committee
passed no title.

The question resolves itself at once into one of jurisdiction;
for, if the court below had jurisdiction, its decree cannot be
attacked collaterally in an action of ejectment. It can only
be done in such case by proper proceedings in the court below
to set aside the sale. This law is so familiar that I will not
stop to cite authorities. Were we to hold a different rule, we
would blow up thousands of titles in every part of the state.

In order to determine this question, we must examine the
petition upon which the proceedings were based. It is settled
law that the facts set out in the petition determine the juris-
diction: Torrance v. Torrance, 53 Pa. 505. The petition sets
forth:

"(a) That the said George Bennett has a wife, Rebecca Ben-
nett, and eight children, viz., Margaret, Annie, Josephine, Jesse,
George, Fred, Robb, and Emma Bennett, all of whom are in
their minority.

"(b) That the personal estate of said lunatic, George Ben-
nett, is not sufficient for the payment of the debts due by him,
as by the statement hereunto annexed, exhibiting said debts so
far as your petitioner can ascertain them, together with a true
and perfect inventory of the personal estate of George Ben-
nett, so far as the same have come to the knowledge of your
petitioner.

"(c) Your petitioner further sets forth that there is no money
in his hands belonging to said lunatic, to be applied for the sup-
port and maintenance of the family of the said lunatic, and for
the education of said minor children.

"(d) Your petitioner, therefore, prays the court to grant
him an order to sell the interest of said lunatic in the above-

mentioned tract of land in Hempfield township at private sale (your petitioner believing that it would be to the interest of the estate of said lunatic to sell the same at private sale, and that thereby more money can be realized for the same), for the purposes aforesaid, or so much thereof as the court may, under the circumstances, deem expedient.

"(e) Your petitioner further shows that due notice of this intended application was given to the wife of said lunatic, viz., Rebecca Bennett, more than five days previous hereto, as appears by the return of John Guffey, Esq., sheriff, hereto attached."

This petition was duly sworn to, and an inventory of the personal estate of the said George Bennett attached. We need not refer to this in detail.

We have thus a petition by the committee of a lunatic for leave to sell the real estate of said lunatic at private sale, for the payment of his debts, the maintenance of his family, and the education of his minor children, without notice to the next of kin. The vital question is, whether these facts appearing upon the face of the petition, without more, gave the Court of Common Pleas jurisdiction. If not, the sale by the committee to Israel Painter had no more validity than if ordered by a justice of the peace or the village blacksmith.

The act of 13th June, 1836, P. L. 589, provides fully for such cases as this. "The act of 21st of March, 1806, provides that where a remedy is provided, a duty enjoined, or anything directed to be done by an act of assembly, the directions of the act shall be strictly pursued. Now, if there be any living virtue and energy in this statute, the act concerning lunatics' estates must be strictly pursued:" Wright's App., 8 Pa. 57. The only way in which the committee can effect an alienation of the lands of the lunatic is through the interposition of the proper Court of Common Pleas, and then only when the exigencies contemplated by the act of assembly in that behalf occur: Warden v. Eichbaum, 14 Pa. 121. The duties of the committee are plainly defined. No order of sale of real estate shall be made, unless upon application and statements as directed in the act. These provisions are imperative. They give the mode in which the jurisdiction shall be exercised by the Court of Common Pleas: Halderman's App., 104 Pa. 251

The twentieth section of the act of 1836 enacts that "the committee of the estate of every person found to be a lunatic or habitual drunkard, as aforesaid, shall have the management of the real and personal estate of such person, and shall, from time to time, apply so much of the income thereof as shall be necessary, to the payment of his just debts and engagements, and the support and maintenance of such person, and of his family, and for the education of his minor children." The twenty-first section provides that, " if the income of the estate of such person shall not be sufficient for the purposes aforesaid, it shall be lawful for the committee aforesaid, under the directions of the court, to apply so much of the principal of the personal estate as shall be necessary for the purpose." And by the twenty-second section : " If the personal estate of such lunatic . . . . . shall not be sufficient for the purposes aforesaid, it shall be lawful for the Court of Common Pleas, having jurisdiction of the accounts of the committee of such person, to make an order authorizing such committee to sell at public sale, or mortgage, such parts of the same as the said court shall deem expedient." But " no order for the sale or mortgage of real estate, as aforesaid, shall be granted, unless it appear that due notice of the intended application was given to the wife, if any, and the next of kin of the lunatic . . . . . capable of inheriting the estate : " See twenty-fourth section.

It will be seen that the petition prayed for, and the court ordered a private sale, while the act authorizes a public sale only ; also, that notice of the application must be given to the next of kin, and that such notice must precede any order of sale. The " next of kin " in this case were George Bennett's minor children, as they were the persons " capable of inheriting the estate " in case of his death. This notice was not given. Notice was given to the widow alone. These were both serious blunders. Are they more than blunders, or mere irregularities, which are cured by the decree of the court, so far as to protect said decree from attack collaterally ? In other words, do they go to the jurisdiction of the court ? We are of opinion that they are more than mere irregularities. Under the act of assembly cited, the court had no power to decree a private sale of this real estate, and no jurisdiction to entertain or consider a petition praying for a private sale. Moreover, the court

had no jurisdiction to make an order even for a public sale, unless it appeared upon the face of the petition that the notice to the next of kin required by the twenty-fourth section had been given. The entire proceeding was coram non judice.

It was strongly urged, however, that if the proceeding was void under the act of 1836, it was nevertheless authorized by the act of April 18, 1853, P. L. 503, commonly called the Price act. We have examined this act with care. It is true that, under the second and third sections thereof, the Court of Common Pleas may order the sale of the real estate of a lunatic upon the application of his committee, where it is made to appear to the court that such sale " is for the interest and advantage " of said lunatic ; but we look in vain through the act for any authority to sell the real estate of a lunatic for the payment of his debts, the support of his family, and the education of his minor children. All this, as before observed, was fully provided for by the act of 1836, and the act of 1853 was not intended to interfere with the mode of proceeding designated in that act. On the contrary, it is expressly provided by the act of 1853 " that nothing in this act contained shall be taken to repeal or impair the authority of any act of assembly, general or private, authorizing the sale of real estate, by decree of court or otherwise," etc. The object of the act of 1853, as we have repeatedly said, was to unfetter real estate, and render it more readily alienable. It was supplementary to the legislation already in existence, and extended the powers of the courts to cases where no power of sale existed before. It was not intended to apply to cases where the court had already full powers to order a sale ; much less was it intended to interfere with the mode of proceeding then in existence. Thus we see that the act of 1836 authorizes the court to order the sale of the real estate of a lunatic, for the purposes hereinbefore stated, viz., to pay his debts, support his family, and educate his children. The act of 1853 conferred an additional power, viz., the power to order a sale whenever it is made to appear to the court that such sale would be to " the interest and advantage " of the lunatic. Had this sale been made for the latter reason, properly set forth in the petition, the sale would doubtless have been valid under the act of 1853, assuming the other requisites of the act to have

been complied with.   But a sale for the payment of debts, the support of the lunatic's family, and the education of his minor children can derive no support from the act of 1853.

The further objection was made that the court below should have directed a conditional verdict, by which the appellants should have received a credit for the two thousand seven hundred and ten dollars of purchase money paid at the time of the sale to Painter, and also for one half of the mortgage given by Painter and Bennett to Lewis Collner for $14,387.20.   The first, third, fifth, sixth, and ninth specifications all bear upon this question.   We fail to find in the record anything to show that any such point was made in the court below, or that it was even called to the attention of the learned judge.   There is not a hint of it in the reasons assigned for a new trial.   On the contrary, the court says in its opinion on the reserved questions, " The only question argued before the court was this question : Were the proceedings under the act of 1836 or the act of 1853 ? "   We must treat the case here as it was treated below.

Judgment affirmed.

Mr. Justice MITCHELL noted his dissent.