# Mitchell v. Spaulding, Appellant.

*Lunacy—Inquisition—Setting aside inquisition—Title to real estate.*

Where a person proposing to purchase real estate finds the record of an inquisition of lunacy against the vendor set aside and vacated for patent illegality, he may safely purchase the real estate, and a subsequent reinstatement of the inquisition will not affect his title.

*Lunacy—Sale of real estate—Notice to next of kin.*

The Act of June 13, 1836, P. L. 592, gives to the court of common pleas jurisdiction to decree a sale of the real estate of an alleged lunatic after a return of an inquisition finding him to be insane ; but no such sale can be decreed unless notice of the intended application is given to the next of kin of the lunatic capable of inheriting the estate. If the next of kin is a minor, some one competent to represent him must be appointed. Service upon the father of the minor, who is not the guardian of the minor, nor of the blood of the alleged lunatic, is insufficient.

Whether a sale of real estate can be authorized while a traverse of the inquisition is pending questioned, but not decided.

A notice of only two days to a party in another state to appear and defend an adverse suit is no notice at all,

*Infant—Suit against—Next friend—Guardian.*

An infant defendant can only appear by a guardian, general or ad litem.

Argued March 16, 1903. Appeal, No. 205, Jan. T., 1902, by defendant, from decree of Superior Court, Jan. T., 1902, No. 41, reversing judgment of C. P. Bradford Co., Feb. T., 1899, No. 177, non obstante veredicto in case of Charles W. Mitchell v. Allen A. Spaulding. Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ. Affirmed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court and by the report of 20 Pa. Superior Ct. 296.

*Error assigned* was the decree of the Superior Court.

*J. W. Stone,* with him *Lee Brooks* and *W. C. Sechrist,* for appellant.

*J. T. McCollum* and *T. S. Hickok,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 18, 1903:

The title of appellant rests upon proceedings by which the property of a man, not only living but present and contesting the right to interfere with him, was taken away from him without even a hearing. Such a title challenges close scrutiny.

It is true that the condition of one non compos mentis demands for his own sake that the judgment of others be substituted for his, and the law must provide even for the case of a prima facie appearance of lunacy. This the statute has done with great care and regard for the rights involved, and every requirement intended for their protection must be strictly observed: Bennett v. Hayden, 145 Pa. 586.

In the present case they were scarcely observed at all. The proceedings from their inception show most discreditable irregularities. The order of sale was improvidently made, the learned judge admitting in his opinion that the pendency of

the traverse was not brought to his knowledge and that if it had been the sale would not have been authorized. But not-withstanding the irregularity he felt himself compelled to hold that the court had jurisdiction to make the order and therefore that the purchaser took a good title. In this view the Superior Court did not concur, and we have now this appeal from its decision.

The order of sale was fatally defective for want of jurisdiction of the court to make it. The inquisition of lunacy at the time of the sale under it was void on its face. It was returned signed by only five jurors summoned by the sheriff. It had an additional signature but not that of any one known to the proceeding. The statute requires that there shall be not less than six jurors of those duly summoned. Nearly two years after the sale the inquisition was set aside by the court for this patent illegality. A few months later, however, it was reinstated and the return allowed to be amended upon affidavits that the superfluous name was really signed by a juror duly summoned and acting as one of the inquest, but that at the time he was so stupid, or drunk or careless that he wrote the signature B. J. Whitman instead of his own name, B. J. Davidson. The reason is not expressed in this exact phrase in the application to amend but this is the plain English of it. The facts are admitted. The right to make such an amendment upon the extraordinary story told and after that lapse of time may well be questioned. But it is not necessary to be determined now as it is clear that it could not be done to the prejudice of intervening rights, and this becomes material because the plaintiff bought during the interval. When plaintiff bought from Spaulding if he went to the record he found an inquisition of lunacy, a traverse, and then the inquisition itself set aside and vacated for patent illegality, and nothing to show that he would not get a clear title from his grantor. When the defendant bought at the committee's sale, on the contrary, he was bound to look at the record on which the validity of his title would depend, and if he did so he found an inquisition clearly illegal on its face, that gave the court no jurisdiction whatever to order the sale.

But the record shows a further defect of jurisdiction, and the one on which the Superior Court rested its decision. The

Act of June 13, 1836, sec. 24, provides that "no order for the sale of real estate shall be granted, unless it appear that due notice of the intended application was given to the wife, if any, and the next of kin of the lunatic capable of inheriting the estate." The giving of such notice is a jurisdictional fact which must appear affirmatively on the record. As was well said by the learned judge of the Superior Court, "This requirement is not merely directory; it absolutely prohibits the making of the order unless the provisions of the section have been complied with. The legislature, no doubt, recognizing the danger involved in the exercise of the jurisdiction which they conferred and the helplessness of the person whose property was to be sold, made the exercise of the power absolutely dependent upon notice to the next of kin, and, that there might be no mistake as to who were entitled to notice, defined the term "next of kin" as the persons "capable of inheriting the estate." This requirement involves no hardship; the person whose property is to be sold is incapacitated, and notice must be given to those who would inherit his estate if he died at that time. This is a safeguard against the abuse of power without full inquiry as to the facts. In Bennett v. Hayden, 145 Pa. 586, it was held that notice to the wife of the lunatic was not notice to the minor children, and no other notice appearing in the petition for leave to sell, the purchaser took no title as against the children who brought ejectment after the death of their father. In the present case the record showed upon its face that a minor son of Ella M. Phillips, a deceased sister of the lunatic, was one of the next of kin within the meaning of the statute and entitled to notice. The petition was presented, and the order of sale made the same day, October 2, 1896, and the petitioner recites, "that on the thirtieth day of September, 1896, he sent by registered letter notice of this intended application to be made on Friday, October 2, 1896, to Amarilla Griswold and Frank Phillips, father of an infant son of Ella Phillips."

A notice of only two days to a party in another state to appear and defend what is practically an adverse suit, is no notice at all. Even under the loosest construction it could not be held to be the "due notice" which the statute requires.

But insufficient as the notice was in point of time, it was not given to any proper person. The party entitled to notice

was the infant.   Notice to the father was a nullity under the direct ruling in Bennett v. Hayden, supra.   There is no evidence that he had assumed the position of next friend, and even if he had it would have been insufficient.   An infant may sue by prochein ami, because all the risk he runs is that of being amerced for costs pro falso clamore suo, and costs the next friend assumes to pay for him.   But as a defendant he incurs the risk of loss of part of his estate, and for that reason he can only appear by some one under the obligations and responsibility of a guardian, general or ad litem.   An appearance by next friend is unauthorized: Swain v. Fidelity Ins., etc., Co., 54 Pa. 455; Troubat & Haly's Practice, sec. 2170.

The defects in the inquisition and in the petition for sale being thus apparent on the face of the record, and going directly to the jurisdiction of the court, the cases relied on by appellant as to collateral attack on the judgment have no applicability.

It was argued by appellee that pending the traverse the court had no jurisdiction to sell the real estate except in case of necessity which should appear as a fact in the proceedings. The language of section 13 of the act of 1836, defining the powers of the court while the traverse is pending, covers only the authority of " management and safe-keeping " of the estate, while the larger authority to sell for maintenance, or payment of debts is in subsequent sections.   And notwithstanding general expressions in some of the cases that management must include the power of sale, no case has yet arisen in which the power to sell while a traverse is pending was involved or has been directly passed upon.   As it is not necessary to do so now we express no opinion on it.

The judgment of the Superior Court is affirmed.