## McFarland Estate.

Argued March 24, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Henry S. Moore*, with him *McMonigle, Geer & Moore*, for McFarland.

*David W. Craig*, with him *J. Wray Connolly, William F. Swanson, Jr.* and *Moorhead & Knox*, for Commonwealth Trust Company of Pittsburgh.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 24, 1954:

A narrow question of statutory construction is presented for consideration on these appeals. The question is: is a court in authorizing a sale of real estate owned by a weak-minded person under the Act of May 28, 1907, P. L. 292, 50 PS 941 et seq. bound to observe

the procedural requirements of the Act of June 13, 1836, P. L. 589, 50 PS 691 et seq.? The Commonwealth Trust Company of Pittsburgh, Guardian of the Estate of Florence P. McFarland, a weak-minded person, is the appellant at No. 46 March Term, 1954 and Florence P. McFarland, the former weak-minded person, is the appellant at No. 234 March Term, 1953.

On February 23, 1943, Florence P. McFarland was declared to be unable, due to weakness of mind, to take care of her property. The Commonwealth Trust Company of Pittsburgh was appointed guardian of her estate. The assets which became subject to the control of the guardian consisted of a piece of real estate formerly occupied by the ward as her home and household furniture of the estimated value of $500.00. The real estate was subject, however, to two mortgages aggregating about $2,700. The guardian filed a petition in the court below on April 13, 1943, requesting authority to sell its ward's real estate at a private sale for $6,500. The petition contained (1) a recital of the appointment of the guardian (2) ownership of the real estate (3) a copy of the agreement to sell (4) the appraised value for tax purposes at $4,800 (5) the appraisal at $6,500 by two real estate brokers and (6) the petitioner's opinion that the price was fair and reasonable and better than obtainable at public sale. The court found that the sale was in the best interests of the ward and entered an order on April 13, 1943, approving the sale.

The ward was declared competent to manage her own affairs on December 11, 1951 and the guardian was discharged. A petition was filed *ex parte* by the former incompetent on March 25, 1952, to vacate the order which authorized the sale of the real estate by the guardian and to set aside the sale. A rule was granted on the Commonwealth Trust Company of

Pittsburgh, as Guardian of the Estate of Florence P. McFarland, grantor, and upon Charles P. Berndt and Mary F. Berndt, his wife, grantees, to show cause why the order of court dated April 13, 1943, should not be vacated and the sale set aside. The court below discharged the rule and refused the prayer of the petition. From this final order Florence P. McFarland has appealed at No. 234, March Term, 1953.

Both appellant and appellee agree that the sale of the real estate was made under the Act of 1907, supra. Section 6, 50 PS 961, of this Act provides: "The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the state of Pennsylvania. *The court appointing such guardian shall have full power over the same,* . . . and shall enter a decree of sale, mortgaging, leasing, or conveyance upon ground-rent of the real estate, or any part thereof, of the said ward, *whenever in the opinion of the court it is necessary* for the support and maintenance of the said ward or his family, . . . or the payment of his or her debts, *or where it is for the interest and advantage of the said ward that the same shall be sold,* mortgaged, leased, or let on ground-rent; . . ." (Italics supplied)

The appellant, however, points to the Act of 1836, supra, where the powers and duties of a committee on lunacy are set forth and contends that the procedural requirements contained therein are applicable to a sale of real estate by a guardian when made under the Act of 1907. The pertinent provisions of the Act of 1836 are as follows: "Section 22. [50 PS 781] If the personal estate of such lunatic or habitual drunkard, shall not be sufficient for the purposes aforesaid, it shall be lawful for the Court of Common Pleas, having jurisdiction of the accounts of the committee of such person, to make an order, authorizing such com-

mittee to sell at public sale, or mortgage, such parts of the same as the said court shall deem expedient.

"Section 23. [50 PS 782] But no such order shall be made, unless the application of the committee for the same be accompanied with:

I. A true and perfect statement or inventory of the real and personal estate, so far as the same has come to his knowledge:

II. A statement of the debts due by such lunatic or habitual drunkard, so far as he can ascertain the same:

III. An estimate of the sum that would probably be required annually, for his support and maintenance, and for the support and maintenance of his family, and education of his children, if he have any.

Which statements, estimate and inventory, shall, in all cases, be supported by the oath or affirmation of the applicant.

"Section 24. [50 PS 783] No order for the sale or mortgage of real estate, as aforesaid, shall be granted, unless it appear that due notice of the intended application was given to the wife, if any, and the next of kin of the lunatic or habitual drunkard, capable of inheriting the estate."

It is, therefore, maintained by the appellant that the guardian failed to comply with the procedural requirements in the following respects:

(a) The application for sale was not accompanied by a statement or inventory of the real and personal estate.

(b) The application did not contain a statement of the debts due.

(c) No estimate was made in the application of the sum probably required for support and maintenance.

(d) Notice of the intended application for the sale of real estate was not given the next of kin.

The question of notice will be reserved for discussion in connection with the appeal of the Commonwealth Trust Company of Pittsburgh at No. 46, March Term, 1954.

The court of common pleas is empowered under the Act of 1836, supra, section 22, 50 PS 781, to make an order authorizing the committee of the ward to sell his real estate only if the personal estate is not sufficient to pay debts, support and maintain the ward and his family and educate his minor children. The Act further states that the court may not make such an order unless certain procedural requirements contained therein are fully met. These are restrictions imposed on the power of the court to act. All of these procedural requirements must be complied with before the court has jurisdiction to decree a sale: *Bennett v. Hayden*, 145 Pa. 586, 23 A. 255; *Mitchell v. Spaulding*, 206 Pa. 220, 55 A. 968. Because the Act of 1907, supra, states "The guardian, . . . shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy . . ." the appellant contends that the court is subject to the same restrictions contained in the Act of 1836, supra. Such contention fails to distinguish between the powers and duties of the *guardian* and the powers and duties of the *court*. The later Act does not say that the *court* shall have precisely the same powers and duties as the court has under the Act of 1836, supra, but specifically designates the *guardian*. Where the language of a statute is clear and unambiguous there is no need to resort to rules of statutory construction to determine its meaning: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS 551. The statement in the Act of 1907, supra, concerning the same

powers and duties of the guardian, is a general statement concerning the guardian's functions and does not in any manner relate to the court's powers. On the contrary, the Act of 1907 confers entirely new powers on the court. There is no longer any restriction that personalty be first exhausted, but the court has ". . . full power over the [guardian], . . . and shall enter a decree of sale, . . . whenever in the opinion of the court it is necessary for the support and maintenance of the said ward or his family, . . . or where it is for the interest and advantage of the said ward that the same shall be sold, . . ." The court, then, is given under the Act of 1907, full discretionary power to determine when it is necessary or for the interest and advantage of the ward to sell the real estate. To hold otherwise would be to disregard the Act entirely. Since the court's power may properly be exercised without being dependent on the procedural requirements of the Act of 1836 the court below had jurisdiction to decree the sale.

The same result, it will be observed, is reached under the Incompetents' Estates Act of 1951, June 28, 1951, P. L. 612, 50 PS 1631 et seq. This Act repeals both of the Acts of 1836 and 1907. In section 443, 50 PS 1823, the court is given the power to approve a sale of an incompetent's real estate whenever it is found to be for the best interests of the incompetent. The court's jurisdiction is not contingent on any precedent procedural requirements. This Act is cited solely as evidence of legislative intent and does not govern this case.

The appellant further argues that the Acts of 1836 and 1907 are in *pari materia*. "Laws . . . are in pari materia when they relate to the same persons or things or to the same class of persons or things": Statutory Construction Act of 1937, supra, art. IV, sec. 62, 46

PS 562. But this rule is applicable only if the words of a statute are ambiguous. In 82 C. J. S. Statutes sec. 366 b, it is stated: ". . . It must not be overlooked that the rule requiring statutes in pari materia to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of a statute is clear and unambiguous." It was stated that the statutes were in *pari materia* in *Bidelman Estate*, 360 Pa. 195, 61 A. 2d 355, but there both Acts were silent on the point of the guardian's powers after the death of the ward. The procedures prescribed in the 1907 Act are different from the earlier Act which demonstrates that the Legislature did not intend one to be identical with the other. Under the 1836 Act the ward's real estate may be sold only when the personalty is insufficient to pay debts and obligations, while under the 1907 Act there is no requirement that personalty be first exhausted, but a sale is permitted when it is for the interest and advantage of the ward. A public sale with notice prescribed by the court is the only method of sale under the Act of 1836. The Act of 1907 provides for either a public or private sale and a designated method of advertisement when sold at a public sale. And as above noted, the Act of 1836 sets forth certain requirements pertaining to the necessity of an inventory, etc., while the Act of 1907 contains no such requirements. These differences prevent the two statutes from being in *pari materia*. Chief Justice WOODWARD said in *Rich v. Keyser*, 54 Pa. 86, 89: ". . . Indeed, the words of a statute, when unambiguous, are the true guide to the legislative will. That they differ from the words of a prior statute on the same subject, is an intimation that they are to have a *different* and not the *same* construction, . . ." See also *State Highway Route No. 72*,

265 Pa. 369, 373, 374, 108 A. 820; *Fidelity Trust Company v. Kirk,* 344 Pa. 455, 458, 25 A. 2d 825. The cases cited by appellant were adequately distinguished by the court below. For these reasons the Act of 1836 and the Act of 1907 are not in *pari materia.*

Finally, the appellant contends that there was nothing before the court in 1943 to support the decree of sale. The court below adequately dealt with this contention when it said: "Insofar as the record is concerned, the only things that throw light on this are the Petition for the appointment, the Petition for the sale of her furniture, etc. and the Petition for the sale of her real estate all of which have been referred to. At most they indicate that the petitioner was confined in a mental hospital, had real estate of the estimated value of $7,000.00 with an assessed value of $4,800.00 for tax purposes which according to the affidavit of two real estate men could be sold for not more than $6,500.00; that her personal estate was of the estimated value of $500.00 and most of it had been sold for $400.00 to her father.

"No mention is found in the proceedings, to the time of the order of sale, indicating the mortgage incumbrances or the other debts of petition [sic]. However, it appears from subsequent papers filed that the property was subject to two mortgages constituting a total indebtedness of $2,700.00 and there existed other debts of considerable amount.

"It is reasonable to assume that the court had this information as well as other data such as probable rental value of the house, probable repairs needed, probable duration of Mrs. McFarland's incompetency, etc. before certifying in its order that in its opinion it was for the best interest of the ward to make the sale.

"No complaint is made of the inadequacy of the price and no fraud is alleged. The strongest interpretation to be placed upon her petition is that if the court had been better informed it would have been of a different opinion. We do not think that is sufficient to warrant further inquiry by hearing or otherwise with a view of vacating the order."

As to notice involved in the Commonwealth Trust Company of Pittsburgh appeal: the guardian filed, on February 27, 1953, a petition to amend, *nunc pro tunc*, its petition of April 13, 1943, in order that the record may reflect the fact that the next of kin of Florence P. McFarland was given and had notice of the petition for authority to make the private sale of the real estate. In support of this petition the depositions of George M. Fehr, Esq., Trust Officer of the Commonwealth Trust Company of Pittsburgh, and of J. Wray Connolly, Esq., Mrs. McFarland's former attorney, were offered in evidence. An affidavit of Anthony Fricker, Mrs. McFarland's father, was also offered in evidence to show that he, as the only next of kin, had notice of the sale of the real estate. The Commonwealth Trust Company of Pittsburgh has appealed in No. 46 March Term, 1954, from the final order of the court below refusing the prayer of its petition.

An amendment to a petition will be allowed *nunc pro tunc* at the discretion of the court: *Fitzgerald v. Stewart*, 53 Pa. 343; *Shoemaker v. Stiles*, 102 Pa. 549; *The Susquehanna Mutual Fire Insurance Company v. H. J. Clinger*, 10 Pa. Superior Ct. 92, 102. Since the final order of the court below is based on depositions and an affidavit, the validity of which do not depend on credibility, this Court may make an independent examination of the evidence and draw its own inferences: *Woodward v. Carson*, 208 Pa. 144, 57 A. 342;

*Collins v. Kephart,* 271 Pa. 428, 117 A. 440; *Wilwohl's Petition,* 311 Pa. 152, 166 A. 654.

Anthony Fricker, the father of the former incompetent, was the only next of kin and, therefore, the only person entitled to notice of the sale. At the time of her adjudication as a weak-minded person, Florence P. McFarland was married to F. Herbert McFarland. In the petition for adjudication the nearest relatives were listed as her father and three sisters. The petition also stated that she was married, but her husband's name was not set forth. We have examined the record in *Commonwealth ex rel. McFarland v. McFarland,* at No. 1891 of 1939, in the County Court of Allegheny County and may, therefore, take judicial notice of the fact that as early as December 12, 1939, Mrs. McFarland's husband had deserted her. Such being the case, Anthony Fricker, the father, was Mrs. McFarland's sole next of kin and, therefore, the only person entitled to notice.

The record discloses that the former incompetent's father did have notice of the sale proceedings. Mr. Fricker presented the petition to the court to have his daughter declared to be of weak mind. He admitted in his affidavit that he discussed the need for the sale with a trust officer of the guardian ". . . for the purpose of satisfying the mortgages of record and paying other debts . . ." He also stated ". . . that he had full knowledge of the proposed sale of said property to Charles P. Berndt et ux., for the consideration of $6,500.00, and had full knowledge that a petition would be presented to the Court of Common Pleas asking for authority to sell said real estate; . . ." This was an admission that he had notice and approved of what was being done. Depositions filed by the trust officer and Mrs. McFarland's former attorney fully corroborate these statements. However, since the order re-

fusing to vacate the decree of sale is herein affirmed the guardian's appeal becomes moot.

The order of the court below discharging rule to vacate order of the court below directing sale of real estate is affirmed and the appeal dismissed. The appeal of the guardian from the refusal of the court below to amend the original petition to sell the real estate is dismissed as moot since the order refusing to vacate decree ordering the sale is affirmed. All costs to be paid by Florence P. McFarland.